No. 24,827.

DUKE W. HOOPER, *Appellant*, v. MALCOLM McNAUGHTON, *Appellee*.

SYLLABUS BY THE COURT.

1. ELECTION CONTEST—*No Error in Refusing to Exclude All Ballots of a Certain Designated Precinct.* The proceedings in the trial of an election contest considered, and *held,* the district court did not err in refusing to exclude from consideration all the ballots of a precinct, objected to for the following reasons:

(*a*) Failure of voter to fold his marked ballot; nonconcealment by voter of his ballot; reception and deposit in the ballot box of such ballots; and deposit of such ballots in the ballot box after the voter retired.

(*b*) Failure to administer oath to voter requiring assistance in marking his ballot, and assistance of such voter by a single official, instead of by two of opposite parties.

(*c*) Distribution through mistake of a few duplicate ballots.

(*d*) Distribution to the voters of unfolded ballots.

(*e*) Taking all the ballots out of the ballot box and sorting them before counting.

(*f*) There were 329 names on the poll book. The court canvassed 286 ballots. The envelope marked "Blank," "Void," and "Objected to" ballots, contained 58 ballots.

(*g*) Lack of authenticity of ballots, and opportunity for tampering.

2. SAME—*Contestee's Right to Defend His Certificate of Election.* A contestee may defend his certificate of election by answer and evidence that ballots cast for him were not counted, and ballots were erroneously counted for the contester.

3. SAME—*Contester Should Be Limited to Complaint Made in Statement and Notice.* After the contester has introduced his evidence and rested, and the contestee has introduced his evidence and rested, the contester may not enlarge his causes of contest by investigating the ballots in precincts not complained of in his statement and notice, and not referred to in the evidence otherwise than that the contester had used the official count in making his case in chief.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed April 7, 1923. Affirmed.

*W. W. Hooper,* and *D. W. Flynn,* both of Leavenworth, for the appellant. *Lee Bond,* of Leavenworth, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The appeal was taken by Hooper, from a judgment of the district court determining a contest of the election for county attorney in Leavenworth county. On canvass of the returns, the board of county commissioners determined McNaughton was elec-

ted. Hooper contested, and the contest court decided against him. Hooper appealed to the district court, and the district court decided McNaughton was elected.

The causes for contest occurred in the second precinct of the Soldiers' Home, Delaware township, and the contention is the precinct should have been excluded from the count. Many of the voters were old and infirm, and some were blind. A heavy vote was polled, and at times the voting was rapid. In many instances and much of the time, the statutory specifications for the successive movements of voter, judges, and clerks, from appearance of the voter at the polling place until his departure, were not observed. The attention of one of the judges was called to nonobservance of statutory requirements. He said it could not be stopped; they had to take into consideration the infirmities of the old men, and had to put up with some things.

Some of the voters, on returning from the booths, would lay their unfolded, marked ballots face upward on the judges' table. Some would stay until the judge had folded the ballot, clipped the number and deposited the ballot in the box. Some would leave at once. In those instances, the judge would fold the ballots, clip the numbers, and deposit the ballots in the box. Voters on receiving ballots were told to fold them, but the instruction was disregarded. Some were told to lay their ballots face downward, if they were unable to fold them. During rush periods, several ballots would accumulate on the table, before the judges could fold, clip, and deposit them. The judges and clerks, friends of candidates, and others, could have seen the markings on the ballots, but there was no evidence any one took advantage of the opportunity. The statute contains the following provisions:

"Before leaving the voting booth, the voter shall fold each of his ballots separately in such a manner as to conceal the names of the candidates and the marks thereon, and so that the printed endorsement and the number thereon may be seen by the election board, and on leaving the booth the voter shall deliver each of said ballots to one of the judges of the election, who shall forthwith, and in the presence of the voter and of the election board, properly clip the number therefrom and deposit the ballots in their respective ballot boxes." (Gen. Stat. 1915, § 4217.)

The contester properly interprets the Australian ballot law as providing an arrangement for compulsory secrecy in casting a ballot officially provided, to the end that corrupt practices in elections may be circumvented. The quoted provision must be inter-

Hooper v. McNaughton.

preted in the light of that purpose, and the contester argues the purpose may not be accomplished unless the provision be regarded as mandatory.

The distinction between mandatory and directory provisions of a statute lies in consequence of nonobservance. An act done in disobedience of a mandatory provision, is void. While a directory provision should be obeyed, an act done in disobedience of it may still be valid. Even although the doing of an act contrary to a directory provision be punishable criminally, still the act itself may not be nugatory. Deviations from instructions contained in directory provisions are usually termed irregularities.

The primary object of an election law,. which transcends all other objects in importance, is to provide means for effective exercise of suffrage. Secrecy is subsidiary, a means· to that end. To vitiate a ballot, disregard of secrecy must be so mischievous as to warrant disfranchisement. To insure secrecy, the statute requires that the curtains of voting booths must come to within two feet of the floor of the polling place. No one would contend that, if the curtain of one of a number of booths at a precinct should, through inadvertence, be six inches short, the election at that precinct would be void. To insure secrecy, the statute provides that any ballot which shall have been marked or written upon with other than a pencil, shall be wholly void, and no vote thereon shall be counted. That provision is mandatory. When the legislative intention is not so plain, whether nonobservance of a regulation avoids a ballot, depends on the intimacy of the relation between the regulation and the general purpose to be accomplished, and the nature and extent of the departure. Generally, a voter may be held to strict compliance with rules laid down for his own guidance. Generally, he is not disfranchised for nonconformity by others with rules laid down for their guidance. Generally, innocent voters are not disfranchised on account of the conduct of other individual voters. Contestants for office may have illegal ballots thrown out, but the legal votes of a precinct may not also be thrown out, unless conduct has been so flagrant as to corrupt the entire vote.

The legislature considered the subject of exposing marked ballots to view:

"Any person who shall, . . . allow his ballot to be seen by any person with an apparent intention of letting it be known how he is about to vote, . . . shall upon conviction be punished by a fine . . ., or by imprisonment, . . . or by both." (§ 4227.)

Hooper v. McNaughton.

No penalty is imposed on the voter unless he acts with apparent improper intent. There is no prohibition against counting a ballot allowed to be seen through accident, or inadvertence, or blameless lack of understanding of the significance of secrecy, and there is no implication of prohibition, in the absence of apparent improper intention. The conclusion must be, the legislature did not regard nonconcealment as working disfranchisement in every case. Although the provisions of section 4217 are highly important, and ought to be observed in all cases, they are not mandatory, in the strict legal sense of the term, and the question whether an exposed ballot should be counted depends on the circumstances attending the exposure.

In this instance, there is no evidence that any voter intended to let anybody know how he voted, or had in his mind thought of either concealment or nonconcealment of his vote. Nobody took notice of the markings on any ballot, and the voting was in fact secret. The members of the election board, instead of being guilty of misconduct, used their best judgment in a difficult situation, and acted, not only with discretion, but with tolerance, somewhat constrained, for the weaknesses of a class of voters, many of whom were doubtless voting for the last time.

A number of voters required assistance in marking their ballots. In each instance the voter was asked if he was willing to take the necessary oath, and replied in the affirmative. He was then assisted, without administration of the oath, and in a number of instances but one official accompanied the voter to the booth to mark his ballot for him. The statute reads as follows:

"If unable to mark his ballot by reason of physical disability he must so declare on oath, to the judges of elections, and he or she shall then be accompanied to the booth by a judge and clerk of election board of different political parties who shall mark his ballot as he shall direct." (§ 4217.)

It is clear a voter is entitled to assistance if he is physically disabled. The oath serves two purposes. It establishes the right of the applicant to assistance, and it protects the election officers, should their conduct be investigated. In this instance, each voter did all he could, personally, to obtain lawful assistance, and so was entitled to it.

The provision for assistance by two officials belonging to different parties is for protection of the voter. Fraud is not presumed, and when a disabled voter, innocently depending on the assistance given,

has his ballot marked, he is entitled to have it counted, in the absence of proof that his directions were not followed. There is no evidence that any voter who was not entitled to it received assistance, that any ballot was not marked as directed, or that the judges and clerks acted otherwise than in good faith.

Soon after opening of the polls, through mistake, five or ten duplicate county ballots were distributed. The mistake was soon discovered and corrected, a number of the ballots were recovered, and there is no showing that any duplicate ever reached the ballot box.

Unfolded ballots were distributed to the voters. The statute provides that when the voter enters the booth he shall unfold his ballot. · The statute makes no provision for folding the ballot before delivery to the voter. Assuming it should be done by one of the judges, the voter is not responsible if it is not done. · He may use the ballot, and if he does, it should be counted.

The statute provides that when a ballot box is opened for counting, the ballots shall be taken out one by one. In this instance the ballots were all taken out and sorted before counting commenced. While this conduct was irregular, it was not malconduct within the meaning of the statute, and there is no contention the result of the election was affected.

Fifty-eight ballots were returned to the county clerk in an envelope marked "Blank," "Void," and "Objected to" ballots. The contester says there is nothing to indicate why those ballots were placed in the enevelope. Presumably they were placed there to comply with the statute (§ 4220). There were 329 names on the poll book. The court canvassed 286 ballots. To this number the contester adds the ballots in the envelope, and concludes 344 ballots were canvassed. Stuffing the ballot box is something which may not be presumed, but must be proved, and there is no evidence that all the ballots placed in the envelope were first taken from the ballot box.

It would serve no useful purpose to review the authorities relating to mandatory and directory provisions of election laws. Decisions from other states are based on the statutes of those states, and divergent views are often taken of statutes which resemble each other. Much confusion results from loose employment of the terms mandatory and directory. In the opinions of this court may be found statements recommending rigorous adherence to the letter of

the law.   Generally, they were made in cases demanding such adherence, as in the case of *Taylor v. Bleakley,* 55 Kan. 1, 39 Pac. 1045, cited by the contester.   Sometimes they appear in cases in which wide departure from plain statutory requirements was not allowed to defeat the will of electors.   Thus, in the first case cited in the contester's brief, the court said:

"It is contended on behalf of the plaintiff that the statute is mandatory, and that no ballot can be counted unless it conforms strictly to the requirements of the law; that the court is not at liberty, by construction, to do away with any of its requirements.   In this contention, we think counsel for the plaintiff is in the main correct, and that the wholesome provisions of the law are neither to be disregarded nor construed away." (*Boyd v. Mills,* 53 Kan. 594, 606, 37 Pac. 16.)

The statute involved in that case contained the following provisions:

"The ballots shall be on plain white paper, through which the printing or writing cannot be read.

"No ballot without the official indorsement shall be allowed to be deposited in the ballot box, and none but ballots provided in accordance with the provision of this act shall be counted." (Laws 1893, ch. 78, §§ 14, 25.)

Colored sample ballots sent to a precinct were voted, instead of the authenticated official ballots, and the court held the ballots cast should be counted.

After reviewing all the cases cited, the court is satisfied that, when its decisions are carefully analyzed, nothing authoritative may be found which militates against the conclusions which have been announced.

The contestee answered that votes cast for him had not been counted, and votes had erroneously been counted for the contester, and prayed for a correct count.   The contestee was privileged to defend his certificate of election by such an answer, and evidence in support of it.   (*Baker v. Long,* 17 Kan. 341; *Lawrence v. Wheeler,* 77 Kan. 209, 213, 93 Pac. 602.)

The contester offered in evidence the official canvass in all precincts but five.   On those returns he had a majority.   After the contester rested, the contestee offered evidence in support of his answer. The contester then proposed to investigate the ballots in precincts, the official returns from which he had already used in his own favor. The votes from those precincts had not been complained about in the contest statement and notice, the evidence of the contestee had not related to them, and the reply to the answer was a general denial.

Hooper v. McNaughton.

Under those circumstances, the contester was properly denied permission to mend his hold, and there is no decision by this court which would permit him to do so.

The contester cities the cases of *Buckland v. Goit,* 23 Kan. 327; *Lawrence v. Wheeler,* 77 Kan. 209, 93 Pac. 602; *Wheeler v. Lawrence,* 78 Kan. 878, 99 Pac. 228. In the Buckland-Goit case, the contest was dismissed by the contest court because of insufficiency of statement of cause of contest. This court held the statement to be sufficient. In the Lawrence-Wheeler case, the syllabus reads:.

"A general charge in the statement of the contester of a county election of error and mistake by the boards of judges in designated precincts in counting the ballots and by the board of canvassers in declaring the result, is sufficient as against an attack by demurrer, and is not void for indefiniteness."

The Wheeler-Lawrence case was a second appeal in a contest proceeding brought by Lawrence against Wheeler. The contest statement appears in full in the Lawrence-Wheeler case just referred to, and shows causes of contest occurring in Macks and Eminence precincts and all other precincts in the county. The answer alleged errors and mistakes in favor of the contester and against the contestee in Macks and Eminence precincts and all other precincts in the county. As the opinion in the Wheeler-Lawrence case states, determination of the contest finally depended on the authenticity of the returns, and count of the ballots, from Macks and Eminence precincts. The contester began by showing the official canvass in all precincts except Macks and Eminence. Desiring to inform the court of the official canvass of those precincts, but not desiring to be bound by the figures because he was contesting them, the contester had the county clerk read the figures. Later, but before he rested (Briefs, 78 Kan. Vol. 18), he introduced in evidence the ballots cast in those precincts, in support of the causes of contest contained in his contest statement. Under these circumstances, there is no similarity between the facts in the Wheeler-Lawrence case and the present case.

The contester complains the court received in evidence for the contestee certain ballots which he asserts had not been sealed, returned, and preserved, as required by law, and which had been left open and exposed so they could have been tampered with. It is settled law in this state that, if these were the ballots which had been cast, canvassed, and returned, and there was no reasonable probability they had been corrupted, it was the court's duty to

count them, even although some of the statutory formalities had not been strictly observed. The questions for determination were questions of fact. Some of the evidence consisted of physical conditions which the trial court saw. To review the abstracted evidence would too greatly prolong an opinion already unduly extended in an effort to state and discuss all the questions presented for decision. The finding of the district court is approved.

The judgment of the district court is affirmed.