No. 37,570

THE STATE OF KANSAS, ex rel. SHELLEY GRAYBILL, County Attorney of Morton County, *Appellee,* v. MAGGIE TIPTON, County Clerk of Morton County, *Appellant.*

(199 P. 2d 463)

Opinion filed November 13, 1948.

*Charles Vance,* of Liberal, argued the cause, and *H. Hobble, Jr.,* of Liberal, and *L. L. Morgan,* of Hugoton, were with him on the briefs for the appellant.

*Shelley Graybill,* county attorney, argued the cause, and *Edward F. Arn,* attorney general, *Harold R. Fatzer,* assistant attorney general, and *Oscar F. Perkins,* of Elkhart, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was a proceeding in mandamus, on behalf of the state, to require a county clerk to place on the general election ballot as a Republican nominee for county commissioner the name of a person who had received "write-in" votes at the August primary sufficient to give him the nomination. Judgment was for the state, and the county clerk appeals. In view of the public interest involved, the appeal was heard as an emergency matter soon after it was filed on October 30, 1948, and was then promptly considered and announcement made that the judgment would be affirmed, with formal opinion to follow. The appeal is here upon findings of fact by the trial court.

At the regular August, 1948, primary election in Morton county, the names of John M. Hardwick and Jim Kelly appeared on the printed Democratic ballot as candidates for the Democratic nomination as county commissioner from the third commissioner district of the county. No one had declared as a candidate for the Republican nomination for the office and consequently no printed name appeared on the Republican ballot as a candidate for such nomination. However, in conformity with the statute, there was printed on the Republican ballot at the appropriate place the title of said office, followed by a blank line with a square, in order that Republican voters might have a chance to make a nomination by "write-in" votes. At the primary election Kelly defeated Hardwick for the Democratic nomination. But enough Republican voters wrote in Hardwick's name to give him the Republican nomination.

On August 6, the county commissioners met and canvassed the vote, and determined the number of votes received by the various candidates for nomination for the different offices. The county clerk recorded in the journal a tabulation of the votes received by each candidate. The canvassing board announced the number of votes received by each candidate. This procedure had been followed in the county in the canvass of votes in all primary elections by the present county clerk and by her predecessor in the office. No objection was at any time filed with the county clerk, clerk of the district court, or county attorney, to the nomination of Hardwick as the Republican nominee for county commissioner, nor did Hardwick make application to the defendant for a certificate of nomination, prior to October 13, 1948. On October 16, 1948, the

county clerk wrote a letter to the printer who was to print the ballots saying that "you may print John M. Hardwick's name on the ballot providing he makes a personal statement that he wants on the ticket as the Republican nominee." On October 18, 1948, Hardwick wrote to the county clerk advising her that he saw no reason why his name should not be placed on the ballot, since he had received the requisite number of votes, and instructing her to place his name on the ballot. Sometime between the 13th and 15th of October, 1948, the county attorney called the county clerk and told her that Hardwick's name should go upon the ballot and she stated "If that is the law, to put it on." At that time the county attorney read to her an excerpt from a case decided in this court in support of his view in the matter, and the county clerk then wrote the letter to the printer hereinbefore referred to. However, the county clerk later examined the opinion in the case to which the county attorney had referred her and decided that the holding in that case was not what she had understood it to be and she thereafter made known her intention to leave Hardwick's name off the ballot. On October 20, she wrote to the printer instructing him to disregard her previous communication and stating "I feel that the law does not authorize his (Hardwick's) name to go on the ballot and I hereby instruct you not to place the same on the ballot, and if such name is placed on the ballot, it is my intention to remove it." What method she intended to use in removing a printed name from a printed ballot, the record does not disclose.

This mandamus action in the district court followed. An alternative writ was issued, directing the county clerk to place Hardwick's name on the ballot or to appear on October 26, 1948, and show cause why that should not be done. In an answer the county clerk alleged that since Hardwick had been duly enrolled, pursuant to G. S. 1935, 25-225, as a member of the Democratic party and had been a candidate for the Democratic nomination as commissioner and had filed no change of party affiliation, he was ineligible for the nomination on the Republican ticket; that no written determination that Hardwick had received the greatest number of Republican votes at the primary election had been signed by the commissioners or presented to her for attestation, filing or attachment to the abstract of votes; that she had issued certificates of nomination to other persons who had been nominated for county offices at the primary, but had issued no certificate to Hardwick and he had made

no application for issuance of such certificate; and asserting that it would be contrary to law to place his name upon the general election ballot. The matter was duly heard and on October 26, 1948, the trial court made findings of fact and issued a peremptory writ directing the printing of Hardwick's name on the ballot. In addition to the findings of fact hereinbefore noted, the court found that the county clerk based her refusal to place Hardwick's name on the ballot "solely on his prior affiliation with the Democratic party," and that she had no objection to the canvass of the votes on the ground of any irregularity; that the omission of Hardwick's name from the ballot "would be arbitrary, illegal and oppressive"; and that the state of Kansas was the real party in interest in the action.

Appellant's first contention is that Hardwick was not eligible for the Republican nomination, and in support of that contention invokes the provision of G. S. 1935, 25-306, to the effect that "no person shall accept more than one nomination for the same office." But Hardwick did not do that. He failed to get the Democratic nomination and only seeks to accept the nomination given by Republican voters. In support of her contention that the provision of section 25-306, *supra*, bars Hardwick from having his name on the general election ballot, she argues that the word "nomination" includes "nominations" of candidates for primary elections. We find nothing to support that construction of the word "nomination" as used in this connection. It does not refer to the methods prescribed for an elector to get his name printed on a party primary ballot (G. S. 1935, 25-205), but clearly refers to party nominations (G. S. 1935, 25-301, 302) made at the primary, or to "independent nominations" (G. S. 1935, 25-303, see Supp.). Appellant calls attention to the provision of G. S. 1935, 25-306 that "whenever any person shall receive *two or more nominations for the same office at different dates,*" etc. (italics supplied), and argues from that that the word "nomination" must include a "nomination" to become a nominee since all party nominations at the primary are made "at the same time." But all nominations at the primary are *not* made at the same time. "Independent nominations" under section 25-303, *supra*, are not necessarily made at the same time as "party nominations" under section 25-302.

The primary election statutes expressly provide for blank lines for "write-in" votes on the primary ballot *in cases where there are*

*no nomination or declaration papers on file for the particular office*
(G. S. 1935, 25-213). We find nothing in the statutes which pre-
vents electors of one party, in such cases, from writing in on their
ballots the name of a person who is enrolled or officially listed as
a member of another party and giving him their party nomination
if such person is otherwise eligible and receives the most votes and
the requisite number as provided by statute (G. S. 1935, 25-213).
In other words, the primary election statutes do not say that an
elector, entitled to vote in the primary as a member of a par-
ticular party, may not be "nominated" for an office in the primary
by the voters of another party. There may be those who doubt
the fairness or soundness of permitting this to be done, but that is
a question of public policy for the legislature and not for judicial
determination.

In further support of her first contention, appellant calls atten-
tion to the annotation in 143 A. L. R. 603. That annotation deals
generally with the constitutionality, construction, and applicability
of state statutes which preclude a candidate who has been defeated
for nomination for an office from having his name printed on the
general election ballot as a candidate for that office. The cases
cited in that annotation are not applicable here since we have no
such statute.

Appellant next contends that there was no determination by the
canvassing board that Hardwick had received the Republican
nomination and that therefore the action should have been brought
against the canvassing board and was improperly brought against
the county clerk. The argument might have greater persuasion
under facts or findings different from those now before us. It is
apparent from the findings here, which are not attacked, that the
procedure in this case was the same procedure which had been fol-
lowed generally both in this and in previous primary elections in
Morton county. If the failure to have a formal certificate of nomina-
tion in the instant case constituted a fatal defect, then candidates for
other offices both in this and prior elections—under the court's find-
ings of fact—were likewise not entitled to have their names printed
upon the general election ballot, and the validity of election results
generally in Morton county would be placed in doubt. In the instant
case there *was* a finding that Hardwick received the most and the
requisite number of votes. That finding was not questioned in the
court below and is not assailed here. Furthermore, the county

clerk did not rest her refusal to place Hardwick's name on the ballot on the absence of a formal finding that he had been nominated or upon any irregularity in the procedure. Her only contention was the one heretofore stated. In this situation we are not called upon to examine every procedural step contemplated by the primary election laws. The statutes should be carefully followed and no laxness in their observance is to be condoned. But under the findings of fact in this case, and in the absence of a contrary statutory mandate, we are unwilling to deny to the appellee the right to which the votes received entitled him. Still more important are the rights of the general public. It appears from this record that candidates for other county offices at the primary received no formal certification of nomination. In other instances as well as this one, there was nothing more than the determination that they had received the most votes. To permit the county clerk, however proper her motive may have been, to discriminate between candidates in such a situation would in effect permit her to impair substantial election rights of the electors.

Elections must be invalidated where there has been violation or nonobservance of statutory provisions which are mandatory, either expressly or by clear implication, or which directly affect the merits of the election. But the general rule is that unless mandatory provisions compel a contrary result election statutes, like other statutes, are to be liberally construed to accomplish their essential purposes (29 C. J. S. 27, 310; *Burke v. State Board of Canvassers*, 152 Kan. 826, 836, 107 P. 2d 773).

It is true, as stressed by appellant, that the statute (G. S. 1935, 25-308) provides that when a certificate of nomination has been filed, it shall be deemed valid unless objections thereto are filed within three days thereafter. From this it is argued that since no certificate of nomination was filed, objectors were given no opportunity to be heard. If parties were here asserting that votes for Hardwick were improperly counted, or attacking the validity of the determination and finding that he had received the most votes, requisite in number to give him the nomination, we might well have a different question before us. But no such contentions are here made. It is not contended that the appellant or anyone had any objections in the trial court except on the grounds of eligibility. Under the practice which had been followed, interested persons had a reasonable right to assume that Hardwick's name would go upon

the ballot. It was not until October 18 that the county clerk indicated otherwise. She was hardly in a position to urge, at that late date, that mandamus would not lie for the reason that a certificate had not been filed, especially in view of the fact that names of other candidates who also had no formal certificates were being put on the ballot.

*State, ex rel., v. Comm'rs of Pratt Co.*, 42 Kan. 641, 22 Pac. 722, involved an election to vote upon a proposed tax assessment to provide funds for purchase of a county poor farm. The validity of the election was attacked on the grounds that the abstract of votes made by the canvassing board had not been certified and signed by the county clerk as required by law. It was held that this failure did not invalidate the election.

Lastly, appellant contends that this action was brought too late. In support, she calls attention to the provision of G. S. 1935, 25-308, that "the certificate of nomination and nomination papers being so filed, and being in apparent conformity with this act, shall be deemed to be valid, unless objection thereto is duly made in writing within three days from the date said papers are filed with the proper officers. . . . All mandamus proceedings to compel an officer to certify and place upon the ballot any name or names, and all injunction proceedings asking that said officers be restrained from certifying and placing upon the ballot any name or names, *must be commenced not less than twenty days before the election."* (Italics supplied.)

Was this provision intended to apply to the state? To so hold would bring an intolerable result. By the simple process of withholding action until less than twenty days remained until the election, a county clerk could keep the name of some candidate or candidates off the ballot. We think the statute should be construed in the light of the general rule relating to statutes of limitation that makes them inapplicable to the state, unless expressly provided otherwise (*City of Osawatomie v. Miami County Comm'rs*, 153 Kan. 332, 110 P. 2d 748, and cases cited on page 335). Certainly it cannot be said that a general election is not a matter of fundamental public concern.

We find no error and the judgment is affirmed.