(664 P.2d 877)
No. 54,679

Prince Enterprises, Inc., *Plaintiff-Appellant,* v. Griffith Oil Company, Inc., *Defendant-Appellee.*

Opinion filed June 16, 1983.

*Ann B. Miller* and *Paul E. Miller,* of Miller, Ball & Miller, of Manhattan, for appellant.

*John C. Fay,* of Manhattan, for appellee

Before MEYER, P.J., PARKS and SWINEHART, JJ.

MEYER, J.: This is an action for forcible detainer, brought by the lessor, appellant Prince Enterprises, Inc. (plaintiff) against the lessee, appellee Griffith Oil Co., Inc. (defendant). Plaintiff appeals an adverse judgment.

The facts of this case, as found by the trial court, are summarized as follows.

On June 3, 1959, JARE Investment Company entered into an agreement to lease two lots in the City of Manhattan, Kansas, to Phillips Petroleum Company. The lease was to begin on January 1, 1960, and run until January 1, 1980. Pursuant to the terms of the lease, the lessee was given the option to extend the lease for a term of five years from and after the expiration of the primary term on the same conditions as contained in the lease. In order to exercise the option to extend the lease, the lessee was required to give to the lessor notice in writing at least thirty (30) days before the expiration of the primary term which, as indicated, was January 1, 1980. The terms of the lease also provided that the lessee would pay $422.80 per month in rent. The lease agreement, dated June 23, 1959, was duly filed with the Register of Deeds of Riley County, Kansas.

On or about October 25, 1961, the original lessor, JARE Investment Company, conveyed the property and assigned its lease agreement to the plaintiff. The conveyance and assignment were duly filed and recorded in the Office of the Register of Deeds.

On January 7, 1977, the defendant and Phillips Petroleum Company entered into a sub-lease agreement regarding the property which is the subject of this action. This agreement provided that the defendant, as sub-lessee, would pay Phillips Petroleum Company $600 per month; this sub-lease was for a

period from January 1, 1977, until December 31, 1977. On March 10, 1977, the Phillips Petroleum Company and the defendant entered into another agreement. This second agreement provided for an assignment of the original lease agreement. The defendant paid Phillips Petroleum Company $17,000 for their leasehold interest and for the personal property located on the real property involved herein.

Through April and May of 1977 correspondence was directed to the defendant and the defendant's bank, First National Bank of Junction City, by Phillips Petroleum Company. This correspondence related to the property in question and required that the defendant continue to pay Phillips Petroleum Company the monthly rentals of $422.80. The Bankers Trust Company, who had financed the purchase of and/or construction of the improvements on the property at the location in question, had refused to agree to accept payments from defendant, instead requiring continued payment from Phillips Petroleum Company. Thereafter defendant received a monthly billing from Phillips Petroleum Company for the lease payment. This arrangement continued until January, 1980.

On January 17, 1980, Mr. Melvin Hall, president and controlling stockholder of the plaintiff received a correspondence from Phillips Petroleum Company. This correspondence reflected that the loan on the property in question had been amortized in full on January 1, 1980. He was furnished a paid promissory note, a cancelled mortgage and assignment, and a release of the mortgage and assignment of rents.

On or about the 30th day of January, 1980, the general manager and president of the defendant, Carrol R. Crabtree, discovered that the defendant had not received its billing from the Phillips Petroleum Company insofar as it related to the subject property. Thereafter, Mr. Crabtree contacted the Phillips Petroleum Company and was advised that no further payments under the original lease were due and that there had been no exercise of the option to renew prior to the expiration of the lease. On the same day, Mr. Crabtree then contacted Mr. Hall by telephone concerning the property. On January 30, 1980, Mr. Crabtree also directed a letter to Mr. Hall, enclosing a check for the January 1980 rent. The check, in the amount of $422.80, was endorsed and deposited on behalf of the plaintiff by Mr. Hall.

On January 29, 1981, the plaintiff, through its president, Mr. Hall, made demand upon the defendant for an increase in rent; the amount demanded was $600 per month. On March 9, 1981, the plaintiff again demanded $600 per month as rent for the property in question. On November 5, 1981, the plaintiff gave the defendant notice to vacate.

The trial court reached the following conclusions of law, based on its findings of fact summarized above:

"In the Judgment of the Court the controlling principles of law that must be resorted to by the Court in resolving the conflicting claims of the parties are found in basic contract principles . . . .

"Ordinarily the trier of fact is charged with the responsibility of determining the intention of the parties. When there is conflicting evidence regarding the intention of the parties pertaining to the existence of a contract a question of the intention of the parties is presented for the trier of fact.

"The evidence is supportive of the conclusion that upon the plaintiff endorsing and depositing the January lease payment, the defendant could reasonably conclude that it had effectively leased the property for another five year period. The Court is not unmindful of the fact that K.S.A. 58-2502 would ordinarily cause the defendant to become a [tenant from] year to year. The mere payment of rent by a tenant and the remaining in possession, would, in the Judgment of the Court, cause K.S.A. 58-2502 to have clear application.

"The evidence which the Court deems most persuasive as to the intent of the parties is found in Mr. Crabtree's letter of January 30, 1980, to the plaintiff. This letter, of course, enclosed the January ·rental check. At that time both of the parties would have been aware of the lapse of the renewal period.

"The letter acknowledges that the period for a renewal of the lease had passed and that some confusion as to who was to receive payments from the defendant was the reason for the defendant not earlier renewing the base lease. The amount of the check is that as paid under the lease and bears the notation that this is a renewal.

"The question then becomes one as to whether it would be reasonable for parties in the same or similar position to believe that the defendant, through Mr. Crabtree, had made an offer to lease the premises in question on the same terms as existed under the previous lease. It would seem reasonable to believe that this was the intention of the parties.

"The letter would have had the legal consequences of constituting an offer by the defendant to rent for a period of five years the subject property under the same terms and conditions as existed under the original lease, or a request by the defendant of the plaintiff to waive the notice requirements and accept its renewal out of time. The defendant, through Mr. Crabtree, enclosed the check for January, 1980, and stated that the defendant intended a five year lease with payments to be made directly to plaintiff.

"It then becomes necessary to determine what, if anything, occurred as a result of the receipt of this communication. The plaintiff, through Mr. Hall, acknowledges receipt of the check and as heretofore indicated the check was duly endorsed and deposited by Mr. Hall.

·   ·   ·   ·

"The Court is not holding, by this Opinion, that there was an effective renewal under the lease by virtue of the defendant having timely resorted to the provisions of the lease which pertained to a renewal. The Court is not unmindful of the provisions of K.S.A. 58-2502 and is aware of the authorities relied upon by the plaintiff where remaining in possession and payment by a holdover tenant does not constitute a renewal of the lease under the existing terms. However, in this case there was more than a mere payment and possession by the defendant. Specifically the Court finds an offer to lease by the defendant as heretofore indicated, which was accepted by the plaintiff."

The trial court thereupon denied plaintiff its relief prayed for, and this appeal followed.

Plaintiff's chief issue is that the evidence does not support the findings of fact and that the conclusions of law drawn therefrom are erroneous. The rule of law governing the disposition of such an issue is a familiar one, and was stated thus in the case of *City of Council Grove v. Ossmann*, 219 Kan. 120, Syl. ¶ 1, 546 P.2d 1399 (1976):

"Where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law."

In the determination of whether the findings of fact are supported by substantial competent evidence, the following principles apply:

"When a verdict or judgment is attacked for insufficiency of the evidence, the duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings. The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below."

"Upon appellate review this court accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings in the trial court, and disregards any conflicting evidence or other inferences which might be drawn therefrom." *Marcotte Realty & Auction, Inc.v. Schumacher*, 229 Kan. 252, Syl. ¶¶ 1, 2, 624 P.2d 420 (1981).

The trial court found, in effect, that defendant had offered to renew the lease for a period of five years subject to all the terms and conditions of the original lease. Since the option to renew, as stated in the original lease, had not been timely exercised, this offer was also one which requested that plaintiff waive the

necessity of compliance with the requirement of timeliness. Plaintiff contends that the letter, which the court concluded was an offer, was insufficient as a matter of law to constitute a valid and acceptable offer.

Whether a contract has been entered into depends upon the intention of the parties; the existence of this intent is a question of fact. *Augusta Bank & Trust v. Broomfield,* 231 Kan. 52, 60, 643 P.2d 100 (1982).

One method by which the intention to contract may be demonstrated is by the process of offer and acceptance. An offer has been described as "a manifestation of willingness to enter into a bargain." *Kansas Power and Light Co. v. Burlington Northern R. Co.,* 544 F. Supp. 1336, 1347 (D. Kan. 1982).

The letter in question specifically stated that defendant "did intend and assume" that its predecessor in interest (Phillips Petroleum) had renewed the lease. It also stated that, thenceforth, all monthly rental checks would be forwarded to plaintiff "during this 5 year renewal." This appears to be a clear indication of defendant's intent to renew the lease for a period of five years, as the option in the original lease provided.

The trial court also concluded that plaintiff's act of depositing the rent check which accompanied defendant's letter constituted an acceptance of the offer contained in that letter. We would note here that in addition to the reference to renewal in its letter, defendant's check also contained the statement, "Jan. 80 Rent Renewal." Plaintiff argues that the cashing of the check was simply a receipt by it of the monthly rental payment to which it was entitled, due to defendant's continued possession of the property. Plaintiff argues that defendant became a tenant from year to year after the expiration of the term of the original lease. See K.S.A. 58-2502. It cites cases holding that the mere acceptance of holdover rents does not operate as a renewal of the original lease. See *City of Ulysses v. Neidert,* 196 Kan. 169, 409 P.2d 800 (1966).

The facts of the instant case are such that plaintiff's act of cashing defendant's check was more than merely accepting a regular monthly payment. Defendant's letter made it clear that defendant intended to renew the lease for five years. There is no indication that plaintiff did anything which would lead defendant to believe that the lease had not in fact been renewed. Thus,

plaintiff's act could be construed as an acceptance of defendant's offer; this construction is especially convincing when one considers that plaintiff continued to accept and deposit defendant's checks, in the amount specified in the original lease, for some 23 months after that original lease would otherwise have expired, without ever objecting to or contradicting defendant's expressed intention to renew the lease, contained in its letter of January 30, 1980.

Authority for this proposition is found in *Crouch v. Marrs*, 199 Kan. 387, 430 P.2d 204 (1967). In that case it was held that the endorsing and depositing of a check constituted an acceptance of the offer to purchase certain property which accompanied that check. That case stands for the proposition that the acceptance of an offer may be manifested by the performance of an act, such as the exercise of dominion over a thing, as well as by an affirmative answer. We agree with the trial court's conclusion that the conduct of the parties herein constitutes an offer to renew the lease for five years and an acceptance of that offer.

Plaintiff argues that defendant failed to comply with the conditions of the option to renew, and that thus defendant may not now assert that the lease has been renewed. Plaintiff cites *Mildfelt v. Lair*, 221 Kan. 557, Syl. ¶ 12, 561 P.2d 805 (1977), for the proposition that an option not exercised pursuant to its expressed terms is lost. We have no quarrel with the general proposition stated above, but it must also be kept in mind that a party to a contract may waive rights in or conditions to that contract, by word or deed. See *Stratmann v. Stratmann*, 6 Kan. App. 2d 403, Syl. ¶ 8, 628 P.2d 1080 (1981). It was the trial court's conclusion that plaintiff had waived the "timeliness" requirement of the option to renew by its acceptance of defendant's offer. We agree with that conclusion.

Plaintiff also argues that the agreement to renew does not comply with the statute of frauds, K.S.A. 33-105, because it fails to state all the terms and conditions of the lease. The renewal was, however, upon the same terms and conditions as the original lease, which was in writing. That original lease was thus embodied in the agreement to renew, and it satisfies the writing requirement of the statute of frauds. See *Continental Builders, Inc. v. Leach*, 5 Kan. App. 2d 766, 767, 625 P.2d 5 (1981), for application of this same principle to a different set of facts.

As a final argument, plaintiff contends that the agreement to renew is invalid due to a want of consideration. This argument lacks merit, because the parties exchanged mutual promises—the plaintiff promised to leave defendant's right to the premises undisturbed for a period of five years, and defendant promised to pay the monthly rent agreed upon. The law is well settled that the consideration underlying a contract may consist of mutual promises. See *In re Estate of Goff*, 191 Kan. 17, 31, 379 P.2d 225 (1963).

In summary, we conclude that there is sufficient evidence of record to support the trial court's finding that defendant offered to renew the lease for five years and that plaintiff accepted this offer, notwithstanding that it was untimely under the terms of the option to renew. These findings justify the court's conclusion that defendant had a valid five-year lease of the premises.

Affirmed.