No. 57,643

IN THE MATTER OF THE ELECTION OF DANIEL A. LEVENS TO THE POSITION OF SHERIFF OF HAMILTON COUNTY, KANSAS. THOMAS M. LAMBETH, *Appellee,* v. DANIEL A. LEVENS, *Appellant.*

(702 P.2d 320)

Opinion filed July 2, 1985.

*E. Edward Brown,* of Calihan, Brown, Osborn, Burgardt and Wurst, of Garden City, argued the cause and was on the brief for appellant.

*K. Mike Kimball,* of Hathaway and Kimball, of Ulysses, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal from the decision of the district court in Hamilton County in which the court found that the appellee had won the sheriff's race by one vote.

Thomas M. Lambeth was the incumbent Democratic candidate and Daniel A. Levens was the Republican challenger for the Hamilton County Sheriff's office in the November 1984 general election. Election results indicated 759 votes for Lambeth and 756 votes for Levens. Levens obtained a recount. On November 13, 1984, the special election board recounted and found a tie vote of 759 each. A coin was tossed and Levens was named the winner.

Lambeth filed a notice of election contest. Trial was set and a panel of three inspectors was appointed pursuant to K.S.A. 25-1447 to recanvass the vote. The three inspectors met on November 30, 1984, recounted the ballots, and determined that there were 758 votes for Lambeth, 756 votes for Levens, and three votes which were questionable. In addition, the inspectors for the first time identified and separated for the court's inspection 18 void and/or blank ballots.

Trial commenced on December 3, 1984. At trial, Mrs. Alta Lewis, a registered voter, testified that she cast absentee ballots in the election on behalf of both herself and her bedridden husband, William George Lewis. Mrs. Lewis marked her husband's ballot outside of his presence and marked it identically to her own ballot. Mrs. Lewis later either assisted her husband in signing the certificate on the outside of the absentee ballot envelope or signed it for him.

The district court found that (1) all three questionable ballots involved erasures and that the voters' intent was clear, that there were two more votes for Levens and one for Lambeth, bringing the total to 759 votes for Lambeth and 758 votes for Levens; (2) that it could not consider or rule on the validity or effect of the William Lewis absentee vote because "illegal votes of this nature must be challenged by election officials and cannot be challenged later in an election contest"; and (3) that any irregularity in the Lewis vote did not constitute grounds for a new election. The court then named Lambeth the winner of the election.

Levens contends that the district court should have considered

the validity of the Lewis absentee ballot and, if it were illegal, should have excluded it from the final tally. Lambeth argues that the district court was correct in refusing to consider the legality of the vote.

William Lewis was a registered voter in Hamilton County and at the time of the election was a resident of a nursing home. Bob Gale, a party precinctman, obtained two absentee ballots, one for Lewis and one for his wife. Mrs. Lewis went to Gale's office and filled out both ballots in Gale's office. She took Mr. Lewis' ballot to him and signed for him or helped him sign the outside of the ballot. She testified as follows:

"Q. Had you discussed with your husband the vote before you marked the boxes?
A. Yes, sir. I told him that—whether he understood or not I don't know.
Q. What do you mean by that, whether he understood?
A. Well, he is kind of bad you know.
Q. Does he have difficulty in remembering things and making decisions?
A. Yes, sir.
Q. So, you're not certain he understood what you talked to him about on the ballot, is that right?
A. I think he did.
Q. Did you discuss with him the votes that you had cast?
A. I did.
Q. Do you think that he knew what you were talking about?
A. Well, he looked at me like he knew what I was talking about.
Q. And then you took these ballots and went where with them?
A. I took them to Mr. Gale's office and he brought them back up here I guess. He said he would."

K.S.A. 1984 Supp. 25-1124(b) allows any sick, physically disabled or illiterate voter who is unable to mark or transmit an absentee ballot to request assistance in marking or transmitting an absentee ballot. The county election officer must allow a person to assist the impaired voter in marking and transmitting an absentee ballot, if an affidavit is signed by the person who renders assistance and is submitted to the county election officer with the absentee ballot. The affidavit contains a statement from the person providing assistance that the person has not exercised undue influence on the voting decision of the impaired voter and that the person providing assistance has marked the ballot as instructed by the voter.

While there was no testimony as to whether Mrs. Lewis signed the affidavit required in 25-1124(c), failure to file it is not sufficient cause to invalidate the whole election.

A substantial compliance with the law regulating the conduct of elections is sufficient, and when the election has been held and the will of the electors has been manifested thereby, the election should be upheld even though there may have been attendant informalities and in some respects a failure to comply with statutory requirements; mere irregularities should not be permitted to frustrate the will of the voters, nor should the carelessness of election officials. 29 C.J.S., Elections § 214(1). See also *Kimsey v. Board of Education*, 211 Kan. 618, 629, 507 P.2d 180 (1973); and *Brown v. Summerfield Rural High School Dist. No. 3*, 175 Kan. 310, 262 P.2d 943 (1953).

In *Hooper v. McNaughton*, 113 Kan. 405, 214 Pac. 613 (1923), an election was not annulled because of irregularities surrounding a vote by a disabled voter. The court said that "when a disabled voter, innocently depending on the assistance given, has his ballot marked, he is entitled to have it counted, in the absence of proof that his directions were not followed. There is no evidence that any voter who was not entitled to it received assistance, that any ballot was not marked as directed, or that the judges and clerks acted otherwise than in good faith." 113 Kan. at 408-09.

An election irregularity will not invalidate an election unless it is shown to have frustrated or to have tended to prevent the free expression of the electors' intent, or to have otherwise misled them. Mrs. Lewis' failure to sign the affidavit did not frustrate, prevent free expression or mislead others thereby invalidating this election. There is no evidence of intentional or willful violation of the statute. The failure to sign the affidavit was a minor irregularity and should not prevent Mr. Lewis' vote from being counted or cause the annulment of the election if Mr. Lewis' vote was legally cast.

The district court concluded that even if the Lewis vote were irregular or illegal, it could be challenged only by election officials at the time it was cast and not later in an election contest. The court erroneously based its decision on *Burke v. State Board of Canvassers*, 152 Kan. 826, 107 P.2d 773 (1940). *Burke* involved an original proceeding in mandamus brought to determine whether or not the persons executing the affidavits were qualified electors of the state. Burke concerned the interpreta-

tion of statutes pertaining to the right of electors absent from the state to vote.

At common law there was no right to contest in court any public election. All election law is created either by the constitution or by statute. K.S.A. 25-1135 establishes the procedure for verifying eligibility of absentee voters. K.S.A. 25-1136 provides that a challenge of the vote of any absentee voter may be made in the same manner as other votes are challenged, and that "[i]n all such cases, the judges shall endorse on the back of the envelope the word 'challenged' and the reason for sustaining the challenge." The law contemplates a challenge at the time the person attempts to vote, not at some subsequent time and not when the vote is being counted. No provisions are made for challenging a voter's right to vote after the ballot has been cast.

All of the statutory language implies that any challenge to the qualification of the voter's right to vote by absentee ballot must be made before the ballot is opened, not afterwards. K.S.A. 1984 Supp. 25-2908 provides in part that "[i]f any person desiring to vote at any election shall be challenged, the person shall not receive a ballot until the person shall have established the right to vote. . . ." The qualifications of the voter cannot be challenged later, because once the ballot is opened and commingled with the others, there is no way of identifying which one is the challenged voter's ballot.

The district court was incorrect in determining that the legality of Lewis' vote could be questioned only at the time it was cast, because it is only the voter's right to vote which must be challenged at that time.

Levens contends that the district court should have found that Mr. Lewis' vote was illegal and void, and since the invalidation of a single vote would place the outcome of the election in doubt, the court should have ordered a new election. Lambeth contends that the vote was not illegal and could not have been the basis for a new election.

K.S.A. 25-2416(b) makes it illegal to vote or attempt to vote more than once at the same election. Whether Mrs. Lewis actually cast two votes has not been determined. From her testimony it is unclear whether she discussed for whom to vote with her husband or if she filled out his absentee ballot according to his wishes.

Even if it is determined that Mr. Lewis' vote was illegally cast by his wife, an illegal vote does not invalidate an election. An illegal vote may change the results of an election if it can be shown for whom the vote was cast. If it cannot be determined for whom the vote was cast, the election must stand. *Olson v. Fleming,* 174 Kan. 177, 254 P.2d 335 (1953); *Talbot v. Sughrue,* 36 Kan. 225, 12 Pac. 935 (1887).

Levens argues, however, that he cannot ascertain how Mrs. Lewis marked her husband's ballot, because if she were to reveal this she would reveal how she voted on her own ballot which she marked identically to her husband's. He maintains that she has a right to the secrecy of her ballot above any other rights.

K.S.A. 60-431 provides that "[e]very person has a privilege to refuse to disclose the tenor of his or her vote at a political election unless the judge finds that the vote was cast illegally." Generally the law protects voters in maintaining the secrecy of their ballot. However, the public policy which protects the secrecy of the ballot may yield to the greater public policy to have in office individuals who were properly and legally elected. A voter is presumed to have been qualified and cannot be compelled to disclose how he voted until this presumption is overcome. While a legal voter cannot be compelled to disclose for which candidate he voted, the law does not protect those who violate the election laws. When it has been established that a voter was not qualified to vote, any person having requisite knowledge may testify for whom such voter cast his ballot or the unqualified voter may be compelled to disclose for whom he voted. See *Campbell v. Ramsey,* 150 Kan. 368, 92 P.2d 819 (1939).

Levens relies on *McCavitt v. Registrars of Voters of Brockton,* 385 Mass. 833, 434 N.E.2d 620 (1982), to support his argument that Mrs. Lewis should not have to reveal how she marked her husband's ballot. In that case, an unsuccessful candidate for mayor challenged the determination by the board of registrars of voters that another candidate had won the election. The trial judge found that eleven absentee voters had failed to follow the material procedures set out in the statute for voting an absentee ballot. Consequently, the judge ruled that the absentee ballots cast by those voters were invalid and had to be rejected. The judge then compelled the voters who cast the invalid ballots to

disclose the candidates for whom they had voted, and those votes were subtracted from the appropriate candidate's total. The Massachusetts Supreme Court determined, however, that the court had erred in compelling the absentee voters to disclose for whom they voted. The Massachusetts court declined to burden the good faith absentee voter with the possibility that a technical mistake in the execution of an absentee ballot may require the voter to reveal for whom the voter had cast a ballot.

*McCavitt* does not support Levens' argument that Mrs. Lewis should not have to reveal how she marked her husband's ballot. The absentee ballots in *McCavitt* were invalid because of a technical error, similar to Mrs. Lewis' failure to sign an affidavit that she had assisted her husband in voting his ballot. If Mrs. Lewis' marking of her husband's ballot is found to be illegal, it was not because of an irregularity in procedure, but because she violated a statute which prohibits her from voting twice. It would be more reasonable to have her reveal how she voted on her husband's ballot and have that ballot disqualified, than not to have her testify as to how she marked her husband's ballot and throw out the whole election.

Since the district court never determined that Mr. Lewis' vote was illegally cast by his wife, it is necessary for the court to first determine whether Mr. Lewis' vote was illegally cast. If Mr. Lewis' vote was illegal, then Mrs. Lewis will be required to testify as to how she marked her husband's ballot for sheriff of Hamilton County, and that vote should then be subtracted from the total votes certified for that candidate.

Levens contends that an illegal vote should be sufficient grounds for allowing a new election. He cites *State v. Tipton,* 166 Kan. 145, 199 P.2d 463 (1948), in which this court said that elections must be invalidated where there has been a violation of statutory provisions.

K.S.A. 25-1448 provides that where a contestant to an election prevails on the grounds stated in subsection (a), (b) or (e) of K.S.A. 25-1436, the court may order another election to be held within 30 days. Those subsections allow a new election when:

(a) The person to whom a certificate of election was issued was ineligible to hold such office at the time of the election;

(b) where qualified voters are deprived of the right of voting and the deprival could change the result of the election; or

(e) the person to whom the certificate of election was issued offered or gave, or caused to be offered or given, a bribe to any person charged by law with any election duty, for the purpose of procuring such person's election.

Ordinarily an election should not be declared void unless it is shown that the result is not in accordance with the will of the electorate or that such will cannot be ascertained because of uncertainties. Public policy requires courts to uphold the validity and declared results of elections which have been properly and fairly conducted or which do not clearly appear to have been illegal. The courts should go to extreme lengths to preserve the validity of all elections, and be slow and reluctant to override the clear intent and purpose of the electorate. An election should not be declared a nullity if on any reasonable basis such a result can be avoided.

An election cannot be declared void unless such relief is authorized by law since there is no inherent power in the courts to pass on the validity of elections. An election cannot be declared void where a statute otherwise limits and prescribes the duties of the court on the trial of a contest. Since the legislature has determined when the courts may order a new election, the courts are limited to those remedies. The district court correctly found that only violations of K.S.A. 25-1436(a), (b) or (e) constitute grounds for a new election.

Levens contends that one of the ballots in Lamont Township was tampered with, and that the motive for the tampering was to eliminate one vote for Levens, so that the inspectors on the recount would find that Lambeth had won by one vote. Levens' theory is that someone obtained a key to the county clerk's office following the first recount, entered the office and added Joe Shorter's name to one of the ballots so that when the inspectors counted the ballots, a Levens vote would be disqualified. No evidence was presented to show that the cans had been opened and the seals removed at any time between the recount and the inspection by the court-appointed inspectors.

The only real evidence that Levens has that the ballot was tampered with is that members of the election and recount boards did not remember seeing the ballot at the times they counted the ballots. The tally sheets signed by the board members, however, show that such a vote was recorded.

The district court found that "the Joe Shorter ballot existed in its present form on the day of the election, no ballot tampering is indicated, the ballot is void, and was probably miscounted as a Levens vote by the special election board."

When a verdict or judgment is attacked for insufficiency of the evidence, the duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings. The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below. *Craig v. Hamilton*, 221 Kan. 311, 313, 559 P.2d 796 (1977); *Prince Enterprises, Inc. v. Griffith Oil Co.*, 8 Kan. App. 2d 644, 648, 664 P.2d 877 (1983) quoting *Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, Syl. ¶ 1, 624 P.2d 420 (1981). Upon appellate review this court accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings in the trial court, and disregards any conflicting evidence or other inferences which might be drawn therefrom. *Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, Syl. ¶ 2, 624 P.2d 420 (1981); *Robles v. Central Surety & Insurance Corporation*, 188 Kan. 506, Syl. ¶ 1, 363 P.2d 427 (1961); *Prince Enterprises, Inc. v. Griffith Oil Co.*, 8 Kan. App. 2d at 648.

The court's finding that no ballot tampering occurred is supported by substantial competent evidence.

Lambeth argues that K.S.A. 25-3108, which provides for the breaking of a tie vote by lot, is unconstitutional because it is a form of lottery which is prohibited by the Kansas Constitution. The district court determined that the statute does not create a lottery and is not unconstitutional. Determination of this issue is vital only if the court finds that Mr. Lewis' vote was illegal and was cast for Lambeth. Such a finding would tie the election vote count, resulting in a Levens victory.

Where a vote results in a tie, and there is no provision made for determining who shall be declared elected, there is no winner declared. However, legislatures in many states have provided by statute that if two or more persons have a tie vote, the election shall be determined by lot. If 25-3108, which allows tie elections

to be determined by lot, is a lottery and therefore unconstitutional, a new election must be held if the election results in a tie.

Article 15, Section 3 of the Kansas Constitution provides: "Lotteries and the sale of lottery tickets are forever prohibited."

Lottery is defined in K.S.A. 21-4302(2) as "an enterprise wherein for a consideration the participants are given an opportunity to win a prize, the award of which is determined by chance." K.S.A. 21-4302(3) defines consideration to mean "anything which is a commercial or financial advantage to the promoter or a disadvantage to any participant." Lambeth claims that the "consideration" is the amount of money a candidate must spend campaigning for election to an office; the prize is the job which pays a salary; and the flipping of a coin to determine the winner provides the element of chance.

Neither the constitution nor the statutes imply that campaign expenses are included in the definition of consideration. A candidate is not required by law to expend money in campaigning for office. Here too, while government is the promoter, it receives no commercial or financial advantage by the expenditure of the campaign funds. The government does not receive any benefit from the election other than the filling of the position sought by the candidates. K.S.A. 25-3108, which provides for the breaking of a tie vote by lot, is not a form of unconstitutional lottery.

This case is remanded back to the district court to determine:

(1) whether or not Mrs. Lewis discussed for whom to vote with her husband and whether or not she filled out his absentee ballot according to his wishes;

(2) if the court determines that Mrs. Lewis cast an illegal ballot, then Mrs. Lewis should be required to testify for which candidate for sheriff she cast Mr. Lewis' ballot, and that vote should then be subtracted from the total votes certified for that candidate; and

(3) if the illegal vote was cast for Lambeth and the election then results in a tie, Levens shall be declared elected sheriff of Hamilton County having been previously selected by lot.

Affirmed in part, reversed in part and remanded for further determinations.