No. 82,402

CLINTON L. THOMASON, *Appellant,* v. MERLIN STOUT, *Appellee,*
v. COUNTY ELECTION OFFICER, *Appellee.*

(978 P.2d 918)

Opinion filed April 16, 1999.

*Grant M. Glenn,* of Woner, Glenn, Reeder & Girard, P.A., of Topeka, argued the cause, and *R. Patrick Riordan,* of the same firm, was with him on the brief for appellant.

*K. Mike Kimball,* of Hathaway, Kimball and Campbell, of Ulysses, argued the cause and was on the brief for appellee Merlin Stout.

The opinion of the court was delivered by

LARSON, J.: This is an election contest where the trial court found that despite several irregularities, Contestant failed to prove Contestee would not have won the election by a majority vote.

Contestee, Merlin Stout, prevailed over the incumbent by 11 votes in the Morton County race for county commissioner of dis-

trict one. Contestant, Clinton L. Thomason, who was not the defeated commissioner, alleged election irregularities deprived voters of the right to vote in the contested election. Additionally, Contestant complained illegal votes were received and legal votes were rejected, which could have changed the result of the election.

Because few of the residents of Morton County live in rural areas, elections are held at the Elkhart City Hall utilizing one election board. Elkhart is divided into three wards and the commissioner districts are divided so that a portion of the voters of ward one, ward two, Taloga Township, and Cimarron Township were eligible to vote in the contested commissioner race in district one.

This necessitated that 12 separate ballots had to be prepared and placed in a box divided by ward number or township followed by the commissioner district number. The list of registered voters in the registration book contained untitled columns, with the first column representing the commissioner district and the second representing ward or township. The election clerk erroneously assumed the sequence of the columns was consistent with the way the ward or township and commission district was designated on the ballots. The clerk marked the first column "Ward" and the second column "District" when in fact the column headings should have been reversed in order to be consistent with the ballots.

Voter 4, who was the first eligible voter in the commissioner district one race, received the wrong ballot because of the error in the registration book. Voter 4 notified the poll workers that he had received the wrong ballot. They verified his claim, gave him the correct ballot, but called the county clerk.

The next voter notifying the poll workers that he had received the wrong ballot was voter 14. The poll workers verified his claim, gave him the correct ballot, and set out to determine what was causing the problem. By the 18th voter, the poll workers had identified and corrected the error by remarking the column headings in the registration book to match the ballots. When the county clerk arrived she was informed the problem had been solved.

Contestant was voter 15. He testified to receiving the wrong ballot, voting it, but later learning wrong ballots had been handed

out. When he returned and requested a correct ballot he was not allowed to vote a second time.

Voters 7, 9, 11, and 12 testified to receiving the wrong ballot but voting it without protest. Only voters 9 and 11 would have been eligible to vote in the contested district one commissioner race. Voters 18 through 22 and 32 all testified they had received the correct ballots.

Thomason contested the election pursuant to K.S.A. 25-1435 and K.S.A. 25-1436(b) and (c). K.S.A. 25-1436 provides in pertinent part:

"Any contest of election to which K.S.A. 25-1435, and amendments thereto, applies shall be brought on any one or more of the following grounds:

. . . .

"(b) some voters were deprived of the right of voting for a candidate . . . when such voters had the right under the election laws of this state to vote thereon, and such deprival could change the result of the election; [or]

"(c) illegal votes were received or legal votes were rejected which could change the result of the election."

After evidence was presented under the short time frame specified for election contests, the trial court made the following findings: (1) Only the results of the commissioner district one election was contested, (2) the poll book columns were marked in reverse order from the ballots; this was error, but the error was discovered and corrected by the 18th voter, (3) although Contestant proved the election official's carelessness in conducting the election caused the irregularities, he failed to establish that the election would have had a different result but for such irregularities, (4) 661 voters signed in to vote while only 655 votes were counted, but there was no evidence presented to show why this occurred or how it affected the election, (5) Contestant failed to present sufficient evidence that any illegal votes were cast in the election.

The trial court looked to *Lambeth v. Levens*, 237 Kan. 614, Syl. ¶ 4, 702 P.2d 320 (1985), for imposing on Contestant the burden of proving that illegal votes were cast and stated that "an illegal vote would not invalidate an election, but an illegal vote may change the results of an election if it can be shown for whom the vote was cast."

Additionally, the trial court determined Contestant had failed to prove the election irregularities would have changed the result of the election:

"It is the public policy of Kansas that courts are required to uphold the validity and declare the results of elections that have been properly and fairly conducted or which do not clearly appear to have been illegal. That public policy requires the courts to go to extreme lengths to preserve the validity of elections and be reluctant to override the clear intent and purpose of the electorate. No election should be declared a nullity if on any reasonable basis that result can be avoided."

Applying the holding to it's factual findings, the trial court held Contestant failed to meet the burden of proof. Its opinion stated: "In other words, the Contestee would have still won the election by a majority vote." The election was upheld.

On appeal, Contestant first challenges the determination that places the burden on him to prove illegal votes were cast in the commissioner district one election. Contestant notes the statutory provisions that govern elections do not expressly state the burden of proof rests with Contestant. Although we acknowledge that the statute is silent regarding who bears the burden of proof, we point out that "[i]t has long been the rule in this jurisdiction that in challenging the results of an election plaintiffs must plead and prove the irregularities complained of changed the result of the election. (*Olson v. Fleming,* 174 Kan. 177, 254 P.2d 335; *Brown v. Summerfield Rural High School Dist. No. 3,* 175 Kan. 310, 316, 262 P.2d 943; *Stanhope v. Rural High-school District,* 110 Kan. 739, 205 Pac. 648; . . .)" *Bishop v. Sewer District No. 1,* 184 Kan. 376, 382, 336 P. 2d 815 (1959). We affirm the trial court's determination that the burden of proof rests with the Contestant.

Next, Contestant contends the trial court erred in determining he failed to prove the irregularities would have changed the result of the election. In *Cure v. Board of Hodgeman County Comm'rs,* 263 Kan. 779, 783, 952 P.2d 920 (1998), we did not strictly construe our election statutes and said that all that is required is a substantial compliance with the governing statutes. What is most significant in our case is the trial court's negative finding that Contestant failed to meet his burden of proof. In *Beech Aircraft Corp. v. Kansas Human Rights Comm'n,* 254 Kan. 270, 275, 864 P.2d 1148 (1993),

we said: "[A] negative finding that a party did not carry its requisite burden of proof will not be disturbed on appeal absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice." In the present case, we clearly have a negative finding made by the trial court which controls the result we reach.

In *Lambeth* and more recently in *Cure*, we discussed and explained the rules that apply to all election cases. In *Lambeth*, we examined the validity of an absentee ballot where another person had signed for a disabled voter but had not submitted an affidavit as required by statute. We noted that a court's authority in an election contest is limited by statute. Specifically, the *Lambeth* court stated: "At common law there was no right to contest in court any public election. All election law is created either by the constitution or by statute." 237 Kan. at 618. We also stated the general rule:

"Ordinarily an election should not be declared void unless it is shown that the result is not in accordance with the will of the electorate or that such will cannot be ascertained because of uncertainties. Public policy requires courts to uphold the validity and declared results of elections which have been properly and fairly conducted or which do not clearly appear to have been illegal. The courts should go to extreme lengths to preserve the validity of all elections, and be slow and reluctant to override the clear intent and purpose of the electorate. An election should not be declared a nullity if on any reasonable basis such a result can be avoided.

"An election cannot be declared void unless such relief is authorized by law since there is no inherent power in the courts to pass on the validity of elections. An election cannot be declared void where a statute otherwise limits and prescribes the duties of the court on the trial of a contest. Since the legislature has determined when the courts may order a new election, the courts are limited to those remedies." 237 Kan. at 621.

In *Cure*, 263 Kan. 779, a voter brought an election contest action based on alleged violations of the Advanced Voting Act. The trial court upheld the election and we affirmed the trial court's decision, holding technical violations were not voting irregularities which would invalidate an election.

In the present case, no voter testified he or she voted in the commissioner district one race when not entitled to do so.

The error Contestant proved (mismarked registration book columns) was discovered by the time voter 14 voted and corrected by the time voter 18 voted. Testimony showed voters 9, 11, 15, and 17 should have received a commissioner district one ballot but did not. If each of these votes had been cast for Contestee's opponent, Contestee would still have won by seven votes.

The other early voters who testified either received a correct ballot or, if they did not, their vote was not cast in the contested race. Testimony from voters 31, 568, and 629, despite irregularities, did not affect the commissioner district one race.

Finally, even though Contestant proved that 661 voters signed in and only 655 votes were cast, there was no substantial competent evidence as to why this occurred or how it could have changed the result of the election.

We agree with Contestant that irregularities occurred. However, under our standard of review of a negative finding, we affirm the trial court's determination that Contestant failed to prove that the irregularities shown would have changed the result of the election.

Affirmed.