(177 P.3d 994)
No. 97,548

STATE OF KANSAS, *Appellee*, v. ALAN WENZEL, *Appellant*.

Opinion filed March 7, 2008.

*Christina M. Waugh*, of Kansas Appellate Defender Office, for appellant.

*Karen S. Smart*, assistant district attorney, and *Keith E. Schroeder*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before GREEN, P.J., GREENE and LEBEN, JJ.

LEBEN, J.: Alan Wenzel appeals both the conviction and sentence for his third conviction for driving under the influence of alcohol.

First, he claims that the breath test showing that he was driving while drunk should not have been admitted because the officer who administered the test did not testify that he had read the manufacturer's operational manual for the testing instrument or personally determined that the test procedure complied with that manual. But K.S.A. 8-1002(a)(3) gives the Kansas Department of Health and Environment (KDHE) the task of developing appropriate testing procedures, and the officers here were certified by KDHE and administered the test according to the KDHE's established procedures. Each officer is not required to read the manufacturer's manual and provide a personal interpretation of it.

Second, he claims that the district court was wrong to assess fees against him related to the cost of his court-appointed counsel with-

out mentioning this orally in the sentencing hearing or showing that the judge had considered the effect of these obligations in light of his financial resources. Because the legislature has made consideration of and, in most cases, assessment of these fees mandatory, we must remand to the district court to follow these statutory requirements.

Third, he claims that the assessment of a $1,500 fine against him was improper since the district court again did not consider the effect of the fine in light of his financial resources. But the fine was the minimum established by the legislature, and the trial judge is not given any discretion to waive it.

*The Breath Test Was Properly Admitted.*

Wenzel was stopped for a traffic infraction shortly after 2 o'clock on a Sunday morning in July 2005. Based on field-sobriety tests, Officer Kristian Sims arrested Wenzel for driving under the influence of alcohol and took him to the police station. There, Wenzel agreed to take a breath test to determine the alcohol concentration in his system. The test result was .118, well above the .08 standard of K.S.A. 2005 Supp. 8-1567.

Once a test result over the legal limit has been obtained, a defendant's primary trial strategy is usually quite clear because—regardless of how the person might have performed on coordination tests—K.S.A. 2005 Supp. 8-1567 makes it illegal to operate a motor vehicle when the person's alcohol concentration as measured by a breath test within 2 hours is .08 or more. Thus, the defense must try to keep that test result from being admitted at trial. This task is not an idle exercise. The State has the burden to prove the defendant guilty beyond a reasonable doubt, and the State bears the burden of demonstrating the admissibility of the evidence it offers. Because of the importance of the breath-test result, additional special legal requirements have been put in place to make sure that the test results are sufficiently reliable to be admitted.

K.S.A. 8-1002(a)(3) requires that an officer certify for any breath-test failure that the testing equipment was properly certified by KDHE, that the equipment operator was certified by KDHE, and that the testing procedures were done in accordance

with KDHE requirements. Citing this statute, the Kansas Supreme Court has noted that "[t]he legislature has enacted provisions . . . in which breath tests are directed to be conducted under the KDHE protocols." *Hemphill v. Kansas Dept. of Revenue*, 270 Kan. 83, 88-89, 11 P.3d 1165 (2000). When testimony establishes that the requirements referenced in K.S.A. 8-1002(a)(3) have been met—that both the machine and its operator were certified by KDHE and the testing was conducted in accordance with KDHE's testing protocols—the test result is admissible. *City of Overland Park v. Cunningham*, 253 Kan. 765, 772-73, 861 P.2d 1316 (1993).

The State presented evidence in this case meeting each of these requirements. Officer Sims testified that he had been trained by KDHE and certified by KDHE to operate the machine. Sims also testified that he followed KDHE procedures in conducting Wenzel's test. Another officer, Sergeant Brian Hirt, testified that the machine had been certified by KDHE and that the machine had been tested regularly, under KDHE procedures, to ensure that it maintained proper function.

Wenzel contends that the State also must show that the testing machine was operated in accordance with the manufacturer's operational manual, citing *State v. Bishop*, 264 Kan. 717, 725, 957 P.2d 369 (1998), and *State v. Lieurance*, 14 Kan. App. 2d 87, 91, 782 P.2d 1246 (1989), *rev. denied* 246 Kan. 769 (1990). Both of these cases mention showing through evidence that the test machine was operated according to the manufacturer's manual. Our review of them suggests, though, that this language went beyond what was at issue in those cases and does not establish an additional requirement for the admissibility of test results.

In both *Bishop* and *Lieurance*, the appellate court affirmed the admission of the test result by the district court. There was no challenge by the defendant in either case that the test result should be kept out of evidence because the officer had not read the manufacturer's operational manual or because some provision in that manual had not been followed. Nonetheless, the court in *Bishop*—based on language originally included in the *Lieurance* opinion—noted that the State must show "that the testing procedures were used in accordance with the manufacturer's operational manual

and the requirements set out by the KDHE" as part of its foundation for admission of the test result. *Bishop*, 264 Kan. at 725.

This language should be read merely to confirm that KDHE has the obligation, as referenced in K.S.A. 8-1002(a)(3), to prepare testing procedures that are consistent with proper machine usage, which would certainly require KDHE to consider any manufacturer-issued manuals regarding the operation of the testing instrument. In cases after *Bishop*, the Kansas Supreme Court and our court have each specifically held that testing officers are not required to read the operating manual for themselves but may instead rely upon KDHE's statement of the required procedures. In *Hemphill*, the Supreme Court rejected the defendant's argument that the test should be excluded because "the officer was not familiar with the breathalyzer manufacturer's operating manual," noting that the legislature had enacted K.S.A. 8-1002(a)(3) and that it provided for tests to be conducted under protocols established by KDHE. 270 Kan. at 89-90. Our court rejected an argument "that the lack of evidence as to the manufacturer's protocol" precluded admission of a test result in an unpublished opinion. *State v. Moroney*, No. 94,087, unpublished opinion filed December 29, 2006, *rev. denied* 283 Kan. 933 (2007). The *Moroney* court noted that "KDHE provides for procedures that are consistent with the manufacturer's instructions" and approved admission of a test result when the evidence showed that the officer had followed the KDHE's protocol. Slip op. at 9-10.

About 20,000 arrests are made in Kansas each year for driving under the influence of alcohol. See State of Kansas, Kansas Dept. of Transportation, Highway Safety Plan FFY 2008 at 12 (available at http://www.nhtsa.dot.gov/nhtsa/whatsup/SAFETEAweb/FY08HSPs/KSFY08HSP.pdf). It would make no sense to require several hundred law-enforcement officers to separately review the manufacturer's manuals each week to decide how to perform breath tests using the Intoxilyzer 5000 machine. We are not required to ignore common sense here because the legislature has clearly provided that it is KDHE's obligation to distill any important requirements from those manuals into a set of testing protocols, and it is KDHE's obligation then to certify each officer's ability to run these ma-

chines after appropriate training. The district court was correct to admit Wenzel's test result even though the officer had not personally read the manufacturer's operational manual for the Intoxilyzer 5000 machine.

*The District Court Must Follow Statutory Requirements for Assessing BIDS Fees.*

The district court ordered that the defendant repay $415 to the Board of Indigents' Defense Services (BIDS) for attorney fees and pay a $100 application fee for obtaining appointed counsel. Defendant raises two arguments in an attempt to avoid these obligations. First, he contends that because the district court did not announce these assessments orally during the sentencing hearing, they may not be assessed at all. Second, he contends that the assessments were improper because the district court did not consider whether he was able to pay them.

Kansas caselaw has long held that the sentence in a criminal case is effective when it is announced from the bench, not when it is placed on paper in a written journal entry. *Love v. State*, 280 Kan. 553, 560, 124 P.3d 32 (2005); *State v. Moses*, 227 Kan. 400, 402-03, 607 P.2d 477 (1980). Thus, when a district judge has the discretion to determine whether sentences will be served concurrently or consecutively, if the judge fails to order consecutive sentences at the sentencing hearing, that cannot be done later by the stroke of a pen on the journal entry. *State v. Jackson*, 262 Kan. 119, 140, 936 P.2d 761 (1997). On the other hand, when a district judge *lacks* discretion in a sentencing decision, the failure to announce some aspect of the sentence as to which the judge had no discretion may be corrected later. Thus, in *Love*, when the district judge failed to announce that the sentences were to be served consecutively—but a statute clearly required that they must be— the judge could enter a later journal entry correcting the matter. 280 Kan. at 560-63.

Our court has not reached consistent rulings in answering the question now before us. In three cases, two of which were published, we have concluded that the failure to announce assessment of BIDS fees at sentencing precludes inclusion of them in the jour-

nal entry of sentencing altogether. *State v. Whillock*, 38 Kan. App. 2d 431, 436, 168 P.3d 56 (2007); *State v. Beddell*, 36 Kan. App. 2d 870, 878, 146 P.3d 1096 (2006), *rev. denied* 283 Kan. 932 (2007); *State v. Miller*, No. 96,025, unpublished opinion filed September 14, 2007, *rev. denied* (2008). In four unpublished cases, we have concluded that the failure to announce assessment of these fees at sentencing did not preclude later assessment either in a journal entry or at a further hearing. *State v. Phillips*, No. 96,754, unpublished opinion filed December 28, 2007, *pet. for review pending* (approving addition of BIDS application fee in journal entry even though it was not mentioned from bench at sentencing); *State v. Bradley*, No. 94,810, unpublished opinion filed August 3, 2007, *rev. denied* 285 Kan. 1175 (2008) (remanding for consideration of defendant's financial resources rather than striking fee assessment placed into journal entry but not mentioned from bench at sentencing); *State v. Harley*, No. 93,349, unpublished opinion filed October 14, 2005, *rev. denied* 281 Kan. 1380 (2006) (setting aside BIDS fee assessment included in journal entry but not mentioned from bench at sentencing but remanding for consideration of whether to assess fees with opportunity for input from defendant); *State v. Littleton*, No. 94,611, unpublished opinion filed July 21, 2006 (same, citing *Harley*), *rev. denied* 282 Kan. 794 (2006).

The *Harley* panel emphasized that assessment of the BIDS fees is mandatory under the applicable statutes. *Harley*, slip op. at 6-9. We agree. K.S.A. 22-4529 provides that each defendant "*shall* pay" the $100 BIDS application fee unless the court waives it based on a finding that it would "impose manifest hardship." K.S.A. 22-4513 provides that the cost of a BIDS attorney "*shall* be taxed against the defendant," again subject to waiver for "manifest hardship." The Kansas Supreme Court has specifically noted that the language of K.S.A. 22-4513 "is mandatory." *State v. Robinson*, 281 Kan. 538, 543, 132 P.3d 934 (2006). Because the assessment of these fees has been required by the legislature except in cases of manifest hardship, human error by the trial judge on the bench does not change what's required. Just as a trial judge's failure to mention that sentences are consecutive does not negate a statutory requirement that sentences be run consecutively, see *Jackson*, a trial

judge's failure to assess BIDS fees unless a waiver is appropriate does not negate the statutory requirement that the judge do so.

Another aspect of the assessment of fees is also suggestive of the result we reach here—that failure to mention that during the sentencing hearing doesn't preclude their assessment. As noted in *Phillips*, slip op. at 4, and *Bradley*, slip op. at 9, court costs and fees are not considered part of the penalty imposed against a defendant. This distinguishes our situation from those in which failure to announce an aspect of a criminal *sentence* from the bench precludes later modification. A sentence is "the punishment imposed on a criminal wrongdoer," Black's Law Dictionary 1393 (8th ed. 2004), but the Kansas Supreme Court has noted that BIDS fees "are not fines or, indeed, any part of the punishment or sanction for the defendant's criminal conduct." *Robinson*, 281 Kan. at 543.

We conclude, then, that a district court's failure to announce the assessment of BIDS fees at sentencing does not preclude their assessment. What, then, of the defendant's second objection, that the district court did not consider whether to waive them for manifest hardship?

The Kansas Supreme Court recently clarified the procedure for assessing the BIDS application fee in *State v. Hawkins*, 285 Kan. 842, 176 P.3d 174 (2008). The application fee is to be assessed at the time that the defendant applies for court-appointed counsel. When reviewing the application for appointed counsel and accompanying affidavit of indigency, the district court should determine both whether the defendant qualifies in full or in part for appointed counsel and whether imposition of the $100 application fee will impose a manifest hardship. If the court does not find manifest hardship, it should order payment of the application fee at the time the court reviews the application. If any portion of that fee remains unpaid at the time of sentencing, then the district court should include the unpaid fee in its sentencing order but need not make any additional findings at that time. 285 Kan. 842, Syl. ¶¶ 5, 6, 7.

The district court in our case did not have the benefit of the recent guidance from *Hawkins* when it was handling this case. The record shows that the district judge checked a box on the application for appointed counsel when he approved the appointment

of counsel, but he did not check the box indicating that the BIDS application fee was to be collected. Thus, it does not appear that any finding was made at that time whether to waive the fee for manifest hardship. At sentencing, defense counsel asked "that BIDS be waived in this case." The district judge did not mention any BIDS fees when sentencing the defendant, but they were included in the journal entry filed more than 2 weeks later. On these facts, we conclude that the assessment of the BIDS application fee should be vacated and the matter remanded to the district court to consider whether the fee should be waived for manifest hardship. If not, the district court may then assess the fee.

The Kansas Supreme Court previously clarified the procedure for assessment of BIDS attorney fees in *Robinson*. Assessment of the BIDS attorney fees is mandatory unless the fees would cause manifest hardship. In that event, they may be partially or totally waived. The sentencing court has the duty to consider the financial resources of the defendant and the burden the fees would place upon the defendant, and a record must be made of the findings of the district court. 281 Kan. at 546. The district court here provided no findings on the record on this issue. We therefore vacate the assessment of BIDS attorney fees and remand the issue to the district court to consider whether to assess those fees under the standards set forth in K.S.A. 22-4513 and *Robinson*.

*The District Court Need Not Review the Defendant's Finances When Assessing the Minimum Fine Required by Law.*

Wenzel's final argument is that the district court was wrong to impose a $1,500 fine on him without first considering his financial resources. In support, he cites K.S.A. 21-4607(3), a general statute providing that when "determining the amount . . . of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose." But here we must follow the specific statute that provides the penalty for a third-time DUI offense, K.S.A. 2005 Supp. 8-1567(f). Under it, the *minimum* fine is $1,500 and the maximum fine is $2,500.

A specific statute usually controls over a general one. *In re K.M.H.*, 285 Kan. 53, 82, 169 P.3d 1025 (2007). The specific statute

here, K.S.A. 2005 Supp. 8-1567(f), has no provision allowing the district court to waive the fine, so there would be no purpose in making findings about the defendant's ability to pay it. It is only when a court imposes more than the minimum fine under K.S.A. 2005 Supp. 8-1567(f) that the district court is required to consider the defendant's financial resources. See *State v. Dukes*, 38 Kan. App. 2d 958, 964-65, 174 P.3d 914 (2008).

The judgment of the district court is affirmed except that the assessment of the BIDS application fee and attorney fees is vacated. The case is remanded with directions to consider these assessments in accordance with this opinion.