No. 98,861

STATE OF KANSAS, *Appellee*, v. DARREN L. RASCHKE, *Appellant.*

(219 P.3d 481)

Opinion filed October 30, 2009.

*Carl Folsom III*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kristafer R. Ailslieger*, assistant solicitor general, argued the cause, and *Scott E. McPherson*, county attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This appeal by defendant Darren L. Raschke addresses whether a sentencing court must consider on the record the financial resources of a defendant and the nature of the burden that payment of a minimum fine would impose before setting the fine.

Raschke also challenges his 19-month prison sentence as unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), because it was based in part on criminal history not proved beyond a reasonable doubt to a jury. We reject this claim as controlled by our previous decision in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). It requires no further discussion.

Raschke pleaded guilty to four counts of forgery in violation of K.S.A. 21-3710(a)(1). Subsections (b)(2), (b)(3), and (b)(4) of the statute set forth fine amounts for first, second, and third or subsequent forgery convictions: For a first conviction, "a person shall be fined the lesser of the amount of the forged instrument or $500"; for a second conviction, "a person shall be fined the lesser of the amount of the forged instrument or $1000"; for a third or subsequent conviction, "a person shall be . . . fined the lesser of the amount of the forged instrument or $2,500."

The sentencing judge imposed a total fine of $325 on Raschke's four counts; this amount was the sum of the values of the four forged instruments involved. The defense did not object.

On appeal to our Court of Appeals, the panel affirmed the fine. We granted Raschke's petition for review.

## PRESERVATION OF ISSUE FOR APPEAL

As a preliminary matter, we consider whether Raschke's challenge to his fine is properly before this court on appeal.

Generally an issue not raised in the district court cannot be the basis for an appeal. See *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007). And we have recently emphasized the procedural bar raised by K.S.A. 60-404, which requires a contemporaneous objection to admission or exclusion of evidence by the district court in order to preserve an issue for appeal. See *State v. King*, 288 Kan. 333, 204 P.3d 585 (2009); *State v. Ortega-Cadelan*, 287 Kan. 157, 194 P.3d 1195 (2008). The absence of a defense objection to the fine at Raschke's sentencing requires brief discussion of these rules.

Raschke's challenge to his fine does not involve an evidentiary ruling. Thus the specific contemporaneous objection rule of K.S.A. 60-404 does not apply here. In addition, despite any general common-law rule that an issue must be raised for the first time in the district court to be properly preserved for appeal, we believe this case is appropriate for application of one of our recognized exceptions—for appellate issues involving purely legal questions arising on proved or admitted facts that will be finally determinative of a case. See *In re Care & Treatment of Miller*, 289 Kan. 218, 224-25, 210 P.3d 625 (2009).

## CONSIDERATION OF DEFENDANT'S FINANCIAL CIRCUMSTANCES IN SETTING MINIMUM FINE

Raschke argues that the word "shall," as used in K.S.A. 21-3710(b), should be read as directory rather than mandatory. He also urges us to consider and apply the language of K.S.A. 21-4607(3). Finally, he invokes the rule of lenity, which requires us to interpret ambiguous or unclear statutory provisions to benefit a

criminal defendant rather than the State. See *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2008).

The prosecution, for its part, distinguishes the statutory language at issue in *Johnson* from that in the forgery statute and argues that K.S.A. 21-4607(3) comes into play only when fines are discretionary or when they exceed a minimum prescribed by statute, neither being the situation in Raschke's case.

Because the outcome of this case will rest on statutory interpretation or construction, our review is unlimited. See *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359, 361, 204 P.3d 1156 (2009). When called upon to interpret a statute, we first heed a statute's express language, giving ordinary words their ordinary meaning. See *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007); *State v. Robinson*, 281 Kan. 538, 539-40, 132 P.3d 934 (2006).

"If . . . a plain reading of the text of a statute yields an ambiguity or a lack of clarity, statutory construction becomes appropriate. In such circumstances, a court must move outside the text of the provision at issue and examine other evidence of legislative intent, such as legislative history, or employ additional canons of statutory construction to [determine] the legislature's meaning." *Board of Leavenworth County Comm'rs v. Whitson*, 281 Kan. 678, 685, 132 P.3d 920 (2006).

Should a statute's meaning not be evident from its plain language, we move from interpretation to construction, employing study of legislative history, application of canons of statutory construction, and appraisal of other background constructions. See *Double M. Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009). Further when examining statutes to determine legislative intent, we must consider various provisions of an act in pari materia with a view toward reconciling and bringing them into harmony if possible. See *State v. Breedlove*, 285 Kan. 1006, 1015, 179 P.3d 1115 (2008). In addition, we have often noted that a specific statute controls over a general statute. *In re K.M.H.*, 285 Kan. 53, 82, 169 P.3d 1025 (2007).

### *"Shall" in K.S.A. 21-3710(b)(2)-(4) as Mandatory or Directory*

Raschke is correct that prior decisions of this court have interpreted the legislature's use of the word "shall" in some contexts as

mandatory and in other contexts as merely directory. Its meaning is not plain, and construction is required.

Legislative context and history can be crucial to the distinction between a mandatory "shall" and a directory "shall." In *Curless v. Board of County Commissioners*, 197 Kan. 580, 584-88, 419 P.2d 876 (1966), we considered a provision stating that a governing body of a city "shall issue a license." We decided the provision was mandatory because the legislature had stricken more permissive language from previous versions of the enactment.

In last June's case of *State v. Phillips*, 289 Kan. 28, 210 P.3d 93 (2009), we examined arguments by criminal defendants that docket fees, booking fees, Board of Indigents' Defense Services (BIDS) attorney fees, and BIDS application fees required certain findings as well as announcement in open court in the presence of the defendants. The defendants made both statutory arguments under K.S.A. 22-3405 (defendant "shall" be present at imposition of sentence) and K.S.A. 22-3424(a) (judgment "shall" be rendered in open court) and a constitutional due process argument. We rejected the statutory arguments, ruling that none of the fees at issue were part of the sentence and that K.S.A. 22-3803 specifically dealt with parties' notification of taxation of costs and allowed notice outside of open court. 289 Kan. at 39-40. On the due process argument, however, we remanded part of the case for findings to be made by the district court because we noted the distinction between mandatory docket and booking fees on the one hand and discretionary BIDS attorney and application fees on the other. We observed that the legislature permitted the court to set the attorney fee after considering the defendant's finances, see K.S.A. 21-4603d(i); *State v. Robinson*, 281 Kan. 538, 546-47, 132 P.3d 934 (2006); and that the legislature permitted the application fee to be waived, see K.S.A. 22-4529; K.S.A. 21-4603d(a)(9). 289 Kan. at 42-43. In other words, even though K.S.A. 22-3803 provided that the court "shall" tax costs other statutory provisions demonstrated that some costs were mandatory in existence and amount and others dependent upon court evaluation and decision. Although *Phillips* did not focus explicitly on the mandatory/directory dichotomy, it

treated a statutory "shall" as directory because of the discretionary effect of other provisions.

Unfortunately, we have no such guidance on K.S.A. 21-3710(b)(2)-(4). See L. 1969, ch. 180, sec. 21-3710 (enacting K.S.A. 21-3710); L. 2001, ch. 186, sec. 1 (mandating a minimum fine for each forgery conviction); 2001 House and Senate Judiciary Committees' notes (discussing mandatory jail time).

When we examine our precedents on the mandatory/directory dichotomy we find our first differentiation between the two possible implications of the word "shall" in *Jones v. State of Kansas, ex rel. Atherby and Kingsbury*, 1 Kan. *273 (1863). Then Chief Justice Nelson Cobb wrote:

"[U]nless a fair consideration of the statute shows that the legislature intended compliance with the provision in relation to the manner to be essential to the validity of the proceeding, it is to be regarded as directory merely . . . .

" ' . . . Statutory requisitions are deemed directory only when they relate to some immaterial matter, where a compliance is a matter of convenience rather than substance.' " *Jones*, 1 Kan. at *279-81.

In the long history since, we have stated that mandatory provisions deal with substance and directory provisions with form. In 1907's *Goodnough v. Webber*, 75 Kan. 209, 211, 88 P. 879, for example, we observed that departure from a directory statute " 'will cause no injury to any person affected by it.' " By 1942, we had established a guideline for distinguishing a mandatory "shall" from a merely directory one:

"[I]t is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done and is intended to secure order, system and dispatch of the public business, the provision is directory." *City of Hutchinson v. Ryan*, 154 Kan. 751, Syl. ¶ 1, 121 P.2d 179 (1942).

See also *Shriver v. Board of County Commissioners*, 189 Kan. 548, 556, 370 P.2d 124 (1962) ("Generally speaking, statutory provisions directing the mode of proceeding by public officers and intended to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties cannot be injuriously affected, are not regarded as mandatory, unless accompanied by negative

words importing that the acts required shall not be done in any other manner or time than that designated."). As recently as 2006, we said that, while "shall" has at times been defined to be "directory, as opposed to.mandatory, the former is related to matters of mere form, not substance." *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 132 P.3d 870 (2006) (citing *Wilcox v. Billings*, 200 Kan. 654, 657, 438 P.2d 108 [1968]).

In *Hooper v. McNaughton*, 113 Kan. 405, 214 P. 613 (1923), we added the concept of consequences for explicit noncompliance to the mix of factors to be considered in determining the import of "shall." We said: "The distinction between mandatory and directory provisions of a statute lies in consequence of nonobservance. An act done in disobedience of a mandatory provision is void. While a directory provision should be obeyed, an act done in disobedience of it may still be valid." 113 Kan. at 407.

We echoed this principle in 1968's *Wilcox*:

"The difference between directory and mandatory statutes, where their provisions are not adhered to, is one of effect only; the legislature intends neither to be disregarded. However, violation of the former is attended with no consequences but failure to comply with the requirements of the latter either invalidates purported transactions or subjects the noncomplier to affirmative legal liabilities
. . . .

"No absolute test exists by which it may be determined whether a statute is directory or mandatory. Each case must stand largely on its own facts, to be determined on an interpretation of the particular language used. Certain rules and aids to construction have been stated. The primary rule is to ascertain legislative intent as revealed by an examination of the whole act. Consideration must be given to the entire statute, its nature, its object, and the consequences which would result from construing it one way or the other. It has been said that whether a statute is directory or mandatory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly, and prompt conduct of business, it is generally regarded as directory . . . where no substantial rights depend on it, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than prescribed, with substantially the same results. On the other hand, a provision relating to the essence of the thing to be done, that is, to matters of substance, is mandatory, and when a fair interpretation of a statute, which directs

acts or proceedings to be done in a certain way, shows that the legislature intended a compliance with such provision to be essential to the validity of the act or proceeding, or when some antecedent and prerequisite conditions must exist prior to the exercise of power or must be performed before certain powers can be exercised the statute must be regarded as mandatory." *Wilcox*, 200 Kan. at 657-58.

See also *Paul v. City of Manhattan*, 212 Kan. 381, Syl. ¶ 2, 511 P.2d 244 (1973) (provision for penalty, other consequence for non-compliance indicates mandatory provision); *Griffin v. Rogers*, 232 Kan. 168, 174, 653 P.2d 463 (1982) (absence of penalty for non-compliance, lack of effect on essential rights from noncompliance indicates directory provision).

Certain other patterns also have emerged over the years in our mandatory/discretionary cases.

For example, we have long held that "provisions for notice of the time and place of an election are mandatory," *City of Wichita v. Robb*, 163 Kan. 121, 124, 179 P.2d 937 (1947), *superseded by statute on other grounds as stated in State ex rel. Johnson v. Schmidt*, 182 Kan. 593, 595, 322 P.2d 772 (1958); thus failure to comply with such provisions renders an election void. *Baugh v. Rural High School District*, 185 Kan. 123, Syl. ¶ 3, 340 P.2d 891 (1959); see also *Lambert v. Unified School District*, 204 Kan. 381, 383, 461 P.2d 744 (1969) ("statutory provisions for notice of a special election are mandatory"); *cf. West v. Unified School District*, 204 Kan. 29, 35, 460 P.2d 103 (1969) (notice of the time and place of an election are mandatory but "departures from directory provisions of the statute, did not vitiate such elections where such irregularities did not frustrate or tend to prevent the free expression of the electors' intentions").

We have also held that a statutory provision requiring officers to provide oral and written notice to individuals suspected of driving under the influence before administering a breath test is mandatory; failure to do so requires suppression of the test results. See *State v. Bishop*, 264 Kan. 717, 720, 957 P.2d 369 (1998); *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, 680, 840 P.2d 448 (1992); *State v. Luft*, 248 Kan. 911, 811 P.2d 873 (1991); *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 755 P.2d 1337 (1988).

As the various iterations of the relevant factors have stated, provisions governing order and timing of procedures are more likely to be determined to be directory only. See *Nguyen v. IBP, Inc.*, 266 Kan. 580, 972 P.2d 747 (1999) (statute requiring administrative law judge to issue award within 30 days from case submission); *State v. Green*, 260 Kan. 471, 920 P.2d 414 (1996) (statute requiring preliminary hearing within 10 days of first appearance); *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs*, 256 Kan. 426, 885 P.2d 1233 (1994) (Board of Tax Appeals' failure to comply with statute's requirements that written order be signed by agency head, that findings of fact, conclusions of law be set forth "not essential to" preserving party's appeal to district court); *State v. Ratley*, 253 Kan. 394, 855 P.2d 943 (1993) (statute requiring prosecuting attorney to file information in office of clerk when defendant bound over from municipal court); *City of Overland Park v. Pavelcik*, 248 Kan. 444, 806 P.2d 969 (1991) (" 'when an appellant has complied with the part of the appeal statute which requires him to take action, any subsequent procedural steps to be taken by some officer, such as a clerk or judge, are directory, not mandatory, and the review proceeding is not defeated by defects created by such officers' "); *City of Garnett v. Zwiener*, 229 Kan. 507, 625 P.2d 491 (1981) (provision for municipal judge to certify complaint, warrant, any appearance bond to district court within 10 days of filing of appeal; appeal not defeated if municipal judge fails to follow time line); *State v. Costa*, 228 Kan. 308, 613 P.2d 1359 (1980) (statute providing for prosecuting attorney to endorse names of all witnesses at time of filing; endorsement of additional witnesses after filing within judge's discretion); *Spalding v. Price*, 210 Kan. 337, 339-40, 502 P.2d 713 (1972) (assessor's notice of value change 2 weeks after directory statutory deadline); *Bruffett v. State*, 205 Kan. 863, 472 P.2d 206 (1970) (provision for district court to sentence defendant within 5 days of plea or jury verdict directory); *State v. Brown*, 205 Kan. 457, 461-62, 470 P.2d 815 (1970) (provision on return, certification directory under rule applicable to " 'statutes which direct the doing of a thing within a certain time without any negative words restraining the doing of it afterwards' "); *State v. Nelson*, 200 Kan. 411, 413-14, 436 P.2d 885

(1968) (time limit for imposition of sentence after denial of motion for new trial); *In re L.C.W.*, 42 Kan. App. 2d 293, 297, 211 P.3d 829 (2009) (failure to issue adjudication in child in need of care proceeding within 60 days not fatal; "shall" in K.S.A. 2008 Supp. 38-2251[c] directory only).

"Shall" provisions affecting a party's rights are more likely to be seen as mandatory. See *State v. Deavers*, 252 Kan. 149, 167-68, 843 P.2d 695 (1992) (late notice in violation of statute would prejudice defendant); *Griffin*, 232 Kan. at 174 (mandatory requirement essential to preserve rights of parties).

Several of our most recent cases have treated "shall" as a kind of trigger to a default reading as substantive or mandatory. See *State v. Andelt*, 289 Kan. 763, 771-73, 217 P.3d 976 (2009); *State v. Bee*, 288 Kan. 733, 738-39, 207 P.3d 244 (2009) (citing *State v. Drayton*, 285 Kan. 689, Syl. ¶ 19, 175 P.3d 861 [2008]; *State v. Robinson*, 281 Kan. 538, 543, 132 P.3d 934 [2006]). However, we have still noted that the context of a statutory scheme and case law is ultimately determinative. See *Bee*, 288 Kan. at 739 (citing *State v. Johnson*, 286 Kan. 824, 850, 190 P.3d 207 [2008]); *State v. Keeley*, 236 Kan. 555, 560, 694 P.2d 422 (1985) (reconciling K.S.A. 21-4618, K.S.A. 21-4503). And we have been periodically careful to note that there is no absolute test to determine whether a "shall" in a statute makes the provision mandatory or directory.

"[T]he words mandatory and directory as applied to the construction of a particular provision in a statute are merely descriptive of the effect that it has been decided to give the provision. The mandatory 'shall' appears [in statutes], but that is not a hard and fast identifying mark which can foretell the character to be assigned to any statutory provision. [Citations omitted.] It can safely be said that the legislature does not intend any statutory provision to be totally disregarded. So, when the consequences of not obeying a particular statute are not prescribed by the legislature, as in the present case, the court must decide the consequences. In determining the consequences of failure to comply with a statute, courts necessarily consider the importance of the literal and punctilious observance of the provision in question with regard to the ultimate object which the legislature sought to serve. [Citation omitted.]

"Generally in construing the effect of noncompliance with a statute, courts first inquire into the purpose behind the statutory provision." *City of Kansas City v. Board of County Commissioners*, 213 Kan. 777, 783, 518 P.2d 403 (1974).

In the end, again, "[e]ach case must stand largely on its own facts, to be determined on an interpretation of the particular language used." *Brown v. Wichita State University*, 217 Kan. 279, 289, 540 P.2d 66 (1975), *overruled on other grounds by Brown v. Wichita State University*, 219 Kan. 2, 547 P.2d 1015 (1976); see also *Marais des Cygnes Valley Teachers' Ass'n v. U.S.D. No. 456*, 264 Kan. 247, 250-52, 954 P.2d 1096 (1998) (reconciling K.S.A. 72-9003 with balance of act).

Raschke calls our attention in particular to *Johnson*, 286 Kan. at 850-51, to support his proposition that the minimum sentence prescribed in K.S.A. 21-3710 is directory. There, parties disputed K.S.A. 21-4704(e)(1), which stated: "The sentencing court has discretion to sentence at any place within the sentencing range. The sentencing judge *shall* select the center of the range in the usual case and reserve the upper and lower limits for aggravating and mitigating factors insufficient to warrant a departure." (Emphasis added.) Raschke is correct; in *Johnson*, we held that the use of the word "shall" in K.S.A. 21-4704(e)(1) was directory. But Raschke fails to acknowledge that we made this decision in light of the provision's first sentence, which provided the sentencing court had discretion to sentence a defendant at any place within the sentencing range. Thus Raschke's argument based on *Johnson* is unpersuasive. The statutory provision at issue in *Johnson* also included clearly permissive language. The statute at issue here does not.

Given all of this background, the following factors are among those to be considered in determining whether the legislature's use of "shall" makes a particular provision mandatory or directory: (1) legislative context and history; (2) substantive effect on a party's rights versus merely form or procedural effect; (3) the existence or nonexistence of consequences for noncompliance; and (4) the subject matter of the statutory provision, *e.g.*, elections or notice on charges for driving under the influence.

Moving to comparison of this list to this case, we have, as mentioned, no helpful legislative history to guide us. Our assessment of the substantive/procedural factors above militates in favor of a mandatory reading. Prescription of a minimum criminal sentence

certainly is material; it is not simply a mode of procedure intended to secure order, system, and dispatch of the public business. In addition, although consequences for noncompliance are implicit rather than explicit, they are real. It appears that a forgery sentence without a fine in some amount would be illegal under K.S.A. 22-3504 and subject to vacation and correction at any time. Regarding the fourth factor, the subject matter of K.S.A. 21-3710(b)(2)-(4) is not one in which we have an established pattern in our mandatory/directory precedents.

We are convinced here that the factors relevant in this case dictate reading the "shall" in K.S.A. 21-3710(b)(2)-(4) as mandatory rather than directory. At least the minimum fine must be imposed upon every forgery conviction.

*Intersection with K.S.A. 21-4607*

Having determined that the minimum fine set forth in the forgery statute, K.S.A. 21-3710(b)(2)-(4) is mandatory, we turn to how these provisions intersect with K.S.A. 21-4607(3). K.S.A. 21-4607(3) states: "In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose." Raschke contends that the only possible path to workable harmony, see *State v. Hawkins*, 285 Kan. 842, 850-53, 176 P.3d 174 (2008), requires grafting K.S.A. 21-4607's requirement for an examination of the defendant's financial circumstances onto the forgery statute, even when the only fine being set is the mandatory minimum. See *State v. McGlothlin*, 242 Kan. 437, 747 P.2d 1335 (1998). He also urges us to address two earlier Court of Appeals' cases dealing with the mandatory minimum fine in K.S.A. 8-1567 on driving under the influence, *State v. Shuster*, 17 Kan. App. 2d 8, 9, 829 P.2d 925 (1992), and *State v. Segovia*, 19 Kan. App. 2d 493, 872 P.2d 312 (1994).

The question of how these two statutes fit together cannot be settled by reference to the plain language of their text. Neither mentions the other, and they conflict as to the mandatory minimum fines under K.S.A. 21-3710(b)(2)-(4).

We thus turn to legislative history; canons of construction; and background considerations, including the two Court of Appeals' decisions reconciling analogous provisions.

The history of these two enactments is somewhat helpful. Both statutes were originally passed in 1969. See L. 1969, ch. 180, sec. 21-3710 (enacting K.S.A. 21-3710); L. 1969, ch. 180, sec. 21-4607 (enacting K.S.A. 21-4607). At that point, K.S.A. 21-3710 did not provide for mandatory minimum fines for first, second, and third or subsequent forgery convictions. The fine provisions were added in 2001, after four other amendments not relevant to the issue before us. See L. 2001, ch. 186, sec. 1. House and Senate committee notes from 2001 suggest that the legislature wanted to match Kansas' forgery penalties to those from surrounding states, but the lawmakers' discussions focused on a need for mandatory jail time, not mandatory fines. The notes also do not reference the overlay of K.S.A. 21-4607. See 2001 House and Senate Judiciary Committees' notes. The language of K.S.A. 21-4607 has not changed in any relevant part since original enactment. See L. 1986, ch. 123, sec. 8 (adding "or assignment to a community correctional services program"). K.S.A. 21-3710(b)(2)-(4) is thus the newer of the two statutes and presumably the more recent statement of legislative intent. See *State v. Keeley*, 236 Kan. 555, 559-60, 694 P.2d 422 (1985).

Moreover, construing K.S.A. 21-3710(b)(2)-(4) as the controlling of the two statutes is consistent with our rule of construction that allows the specific to supersede the general. See *Keeley*, 236 Kan. at 560. K.S.A. 21-3710(b)(2)-(4) deals specifically with fines for forgery; K.S.A. 21-4607(3) deals with criminal fines generally.

Turning to the two Court of Appeals' cases, we note that *Shuster* distinguished discretionary fines from mandatory fines. The panel stated: "Discretionary fines . . . are fines with set limits that a court 'may' impose in addition to or instead of incarceration for felonies or misdemeanors. Mandatory fines . . . are fines that are mandatory which 'shall' be imposed along with set ranges of confinement." Because the fine imposed was greater than the statutory minimum, *i.e.*, discretionary rather than mandatory, the panel determined that the district judge abused his discretion by failing to abide by

the requirements of K.S.A. 21-4607, including subsection (3) on consideration of a defendant's finances. *Shuster*, 17 Kan. App. 2d at 9-10.

Two years later, in *State v. Segovia*, 19 Kan. App. 2d 493, 872 P.2d 312 (1994), another panel of our Court of Appeals stated unequivocally that K.S.A. 21-4607 did not apply when a mandatory minimum fine was imposed under K.S.A. 8-1567(f). Only " '[i]f the judge, in his or her discretion, imposes a fine exceeding the mandatory minimum, [must] K.S.A. 21-4607 criteria . . . be taken into consideration.' " *Segovia*, 19 Kan. App. 2d at 494 (quoting *Shuster*, 17 Kan. App. 2d at 9).

We agree with the reasoning of *Shuster* and *Segovia* and the most recent Court of Appeals' case examining a mandatory fine for driving under the influence and K.S.A. 21-4607, *State v. Wenzel*, 39 Kan. App. 2d 194, 202-03, 177 P.3d 994 (2008). In *Wenzel*, the panel said:

"The specific [DUI] statute here . . . has no provision allowing the district court to waive the fine, so there would be no purpose in making findings about the defendant's ability to pay it. It is only when a court imposes more than the minimum fine . . . that the [sentencing] court is required to consider the defendant's financial resources." *Wenzel*, 39 Kan. App. 2d at 202-03.

The concept of inflexible mandatory minimum fines—which we have held K.S.A. 21-3710(b)(2)-(4) to be examples of—is incompatible with the malleability inherently injected into fine setting by consideration of defendant's financial circumstances. Should the legislature want to resolve this conflict in favor of consideration of such circumstances when a defendant is convicted of forgery or another crime for which conviction prompts a mandatory minimum fine, it need only amend K.S.A. 21-4607 to state clearly that its subsection (3) overrides any such fine.

*Rule of Lenity*

Raschke's final argument that the rule of lenity requires any statutory ambiguity to be resolved in his favor has no application. Consideration of a defendant's financial circumstances may or may not lead to a favorable fine outcome for that defendant. When a legal argument advanced by a criminal defendant may or may not

benefit all such defendants, the rule of lenity does not compel its acceptance.

The judgment of the district court is affirmed. The judgment of the Court of Appeals is affirmed.

JOHNSON, J., not participating.
ELLIOTT, J., assigned.