The Honorable Steven R. Brunk
State Representative, 85th District
State Capitol, Room 143-N
Topeka, Kansas 66612
Dear Representative Brunk:
You inquire whether K.S.A. 40-2248 violates Article 2, § 1 of the Kansas Constitution because it purportedly limits the ability of future legislatures to mandate health insurance coverage for certain health services unless a report assessing the impact of such a mandate (impact report) is provided. If constitutional, you then inquire whether K.S.A. 40-2248 prohibits the legislature from considering mandatory health insurance coverage legislation in the absence of an impact report. *Page 2 
Does K.S.A. 40-2248 violate Article 2, § 1 of the KansasConstitution?
Answer: No.
K.S.A. 40-2248 provides, in part:
 Prior to the legislature's consideration of any bill that mandates health insurance coverage for specific health services . . . the person or organization which seeks sponsorship of such proposal shall submit to the legislative committee to which the proposal is assigned an impact report that assesses both the social and financial effects of the proposed mandated coverage.[1]
Before addressing Article 2, § 1, it is helpful to recount briefly the interplay between the state constitution and a statute that is challenged as violating the constitution.
1. The Kansas Constitution limits, rather than confers, power. Accordingly, when a statute is challenged on constitutional grounds, the question is not whether the constitution authorizes the activity, but whether the constitution prohibits it.[2]
2. A statute will withstand a constitutional challenge unless the infringement is clear beyond a substantial doubt.[3]
3. When determining whether a statute is constitutional, the statute and the pertinent constitutional provisions are construed together with a view to making the legislative intent effective rather than to defeat it.[4]
K.S.A. 40-2248 simply provides that a sponsor of proposed legislation imposing mandated health insurance coverage submit an impact report to the appropriate legislative committee. The testimony from proponents of the bill — eventually codified at K.S.A. 40-2248 — was that the impact reports would assist legislators in evaluating the cost, necessity, and effectiveness of prospective legislation mandating certain health insurance coverage.[5] There was no intent to preclude the legislature from considering such legislation in the absence of such report. Applying the general principles mentioned above, K.S.A. 40-2248 does not violate the constitution. *Page 3 
You mention Article 2, § 1 of the Kansas Constitution as a possible basis for challenging
K.S.A. 40-2248. However, this section provides that "[t]he legislative power of this state shall be vested in a house of representatives and senate."
This provision simply "expresses the fundamental concept that we are to be governed by our duly elected representatives."[6] The Kansas Supreme Court has given this power the broadest possible interpretation. In Ratcliff v. Stockyards Co., [7] the Court concluded that "there are no limits upon the legislative power of the legislature of the state, except such as may be found in the state and federal constitutions."
Article 2, § 1 is also the source of the non-delegation doctrine which prohibits the legislature from delegating its legislative power to a public or private person or agency.[8] This doctrine is violated when a law confers legislative power on a person or group. If there is no conferring of legislative power, a statute will not offend Article 2, § 1.[9]
Clearly, this statute does not attempt to delegate the legislature's power to enact legislation to another person or entity. Thus, K.S.A. 40-2248 does not violate Article 2, § 1 of the Kansas Constitution.
Is the Legislature required to complywith K.S.A. 40-2248 before enacting mandatory health insurancecoverage?
Answer: No. The legislative history of K.S.A. 40-2248 indicates no desire to limit the legislature's power to mandate health insurance coverage for certain health services. Testimony during the hearings reveals that the intent was simply to acquire information before enacting more mandates.[10]
Representative Elaine Wells testified that "[i]f mandates do not actually help the system but may hinder it, the best solution may be to do a little more research and reporting."[11] Other proponents representing insurance and employer organizations provided similar testimony.[12]
 The financial and social reports will not close the door on the legislature passing worthy mandated benefit proposals in the future. Instead, the reports should assist legislators in the future to decide if the benefits of a mandated coverage proposal justifies the inevitable higher insurance costs that coverage would create.[13] *Page 4 
Interpreting K.S.A. 40-2248 to prohibit the legislature from pursuing mandatory health insurance coverage because sponsors fail to file an impact report is not supported by either the plain language of the statute or its legislative history.
Moreover, the provision that a sponsor "shall" submit an impact report is directory rather than mandatory. This means that a legislative committee is under no obligation to entertain mandatory health insurance coverage legislation unless the sponsor submits an impact report. It does not mean that legislation imposing mandatory health insurance coverage is invalid in the absence of an impact report.
A recent Kansas Supreme Court case provides the analysis for determining whether the word "shall" in a statute is mandatory or directory. In State v Raschke, [14] the Court considered whether "shall" is mandatory in a statute establishing minimum fines for forgery. In determining that "shall" is mandatory, the Court, after reviewing relevant Kansas appellate court decisions since 1863, enunciated the following principles:
1. Legislative context and history are crucial in making the determination whether "shall" is mandatory or directory. Although there is no absolute test, the context of a statutory scheme and case law is ultimately determinative.
2. Mandatory provisions deal with substantive matters as opposed to mere form. "Shall" provisions affecting a person's rights are more likely to be seen as mandatory.
 It is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done and is intended to secure order, system and dispatch of the public business, the provision is directory.[15]
3. Another distinction between mandatory and directory provisions lies in the consequence of noncompliance. An act done in disobedience of a mandatory provision is void. Although a directory provision should be obeyed, an act done in disobedience of may still be valid.
 It can safely be said that the legislature does not intend any statutory provision to be totally disregarded. So, when the consequences of not obeying a particular statute are not prescribed by the legislature . . . the court must decide the consequences. In determining the consequences of failure to comply with a statute, courts necessarily consider the importance of the literal and punctilious observance of the *Page 5 
provision in question with regard to the ultimate object which the legislature sought to serve.[16]
Applying these standards to the statute at issue here, "shall" is directory because: (1) the legislative history is clear that an impact report, while helpful, does not preclude the legislature from enacting mandatory health insurance coverage for certain health services; (2) failure to submit an impact report does not jeopardize individual rights; and (3) the consequence of not submitting an impact report is that the legislative committee can refuse to consider mandatory health insurance coverage legislation. However, failure to submit an impact report does not preclude the legislature from considering and enacting legislation imposing mandatory health insurance coverage.
Sincerely,
Steve Six Attorney General
Mary Feighny Deputy Attorney General
Janet L. Arndt Assistant Attorney General
SS:MF:JLA
[1] K.S.A. 40-2249 addresses the contents of an impact report.
[2] In re Tax Appeal of ANR Pipeline Co.,276 Kan. 702, 725 (2003).
[3] In re Tax Application of Lietz Const. Co.,273 Kan. 890, 903 (2002).
[4] Newberry v. Befort, 28 Kan.App. 2d 807, 810 (2001).
[5] Minutes, House Committee on Insurance, February 28, 1990, Attachments 1, 4, 7, 8;Minutes, Senate Committee on Financial Institutions Insurance, March 29, 1990, Attachments 5-10.
[6] Sedlak v. Dick, 256 Kan. 779, 802 (1995).
[7] 74 Kan. 1 (1906).
[8] Blue Cross Blue Shield of Kansas v. Praeger276 Kan. 232, 276 (2003).
[9] Attorney General Opinion No. 85-6.
[10] Minutes, House Committee on Insurance, February 28, 1990, Attachment 1.
[11] Id.
[12] Id. at Attachments 4,7,8; Minutes, Senate Committee on Financial Institutions Insurance, March 29, 1990, Attachments 5-10.
[13] Id.
[14] 219 P.3d 481 (Kan. 2009).
[15] City of Hutchinson v. Ryan, 154 Kan. 751 (1942), cited in State v. Raschke at 485.
[16] City of Kansas City v. Board of County Comm'rs,213 Kan. 777 (1974), cited in State v. Raschke at 488. *Page 1