Luckert, J.,
dissenting: I dissent from the majority’s holding on two issues: I would hold that (1) Gustin Brownlee’s speedy trial rights were violated and (2) the district court erred by failing to instruct the jury on the lesser included offense of voluntary manslaughter.
1. The speedy trial violation demands reversal.
The majority recognizes that Brownlee’s trial did not begin within the speedy trial time limit of K.S.A. 2012 Supp. 22-3402 and that the district court erred by assessing time lost due to a continuance Brownlee did not personally request or approve. See K.S.A. 2012 Supp. 22-3402(g) (“If a defendant, or defendant’s attorney in consultation with the defendant, requests a delay and such delay is granted, the delay shall be charged to the defendant ....”); State v. Vaughn, 288 Kan. 140, 144-45, 200 P.3d 446 (2009) (affirming that a waiver of speedy trial extends to defendant’s request for or agreement to a continuance). Nevertheless, the majority holds the speedy trial violation does not warrant reversal of Brownlee’s conviction because of the operation of K.S.A. 2012 Supp. 22-3402(g). I disagree with the majority’s reading of that subsection and, more specifically, its disassociation of tire first sentence from the second. I would hold that the entirety of subsection (g) relates to situations where “a defendant, or defendant’s attorney in consultation with the defendant, requests a delay.” See K.S.A. 2012 Supp. 22-3402(g).
The difference between my position and the majority’s obviously comes down to a dispute about statutory interpretation. As the majority points out, when interpreting statutes, “the touchstone is legislative intent,” if that intent can be ascertained. State v. Brown, 295 Kan. 181, 193, 284 P.3d 977 (2012). The most fundamental *525 rule of statutory interpretation is that we attempt to discern that intent from the language used by the legislature. See State v. Stallings, 284 Kan. 741, 742-43, 163 P.3d 1232 (2007) (explaining this plain language inquiry). If we find that language ambiguous, we turn to canons of statutory construction or look to extrinsic aids such as legislative history or background considerations. Brown, 295 Kan. at 193; see also State v. Raschke, 289 Kan. 911, 914, 219 P.3d 481 (2009) (“Should a statute’s meaning not be evident from its plain language, we move from interpretation to construction . . . .”).
The legislature chose to use the following words when enacting K.S.A. 2012 Supp. 22-3402(g):
“(g) If a defendant, or defendant’s attorney in consultation with the defendant, requests a delay and such delay is granted, the delay shall be charged to the defendant regardless of the reasons for making the request, unless there is pros-ecutorial misconduct related to such delay. If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay.”
Both the text and structure of this subsection create an ambiguity in that it is not explicit whether a delay that might be initially attributed to the defendant but is later charged to the state (as referenced in the second sentence) must first be a delay requested by the defendant (as laid out in the first sentence). I would conclude, reading the statute in its entirety and considering the provision in context, that the legislature intended for the first sentence to define when the second sentence applies.
The structure of a statute often provides a clue regarding legislative intent. See Brown, 295 Kan. at 196 (considering structure to discern whether legislature intended to create alternative means of committing a crime); see also, e.g., Meredith v. Federal Mine Safety and Health Review, 177 F.3d 1042, 1053 (D.C. Cir. 1999) (“[W]e find that the text and structure of the Mine Act, as well as the legislative history, inexorably lead to a single conclusion.”). Typically, sentences within the same subsection relate to one another and should be read together. See Brown, 295 Kan. at 196. Also, *526 courts do not consider parts of an act in isolation but are instead required to construe all parts together. Board of Miami County Comm’rs v. Kanza Rail-Trails Conservancy, Inc., 292 Kan. 285, 322-23, 255 P.3d 1186 (2011). This rule holds especially true when applied to words in the same subsection and, even more, to words in contiguous sentences under the canon of construction known as noscitur a sociis—that is, the meaning of a word is or may be known from its accompanying words.
Applying these considerations to subsection (g) suggests to me that the first sentence should be read to define the circumstances under which the second sentence operates. Thus, when both the first and second sentences refer to “a delay,” they mean a delay requested by or agreed to by the defendant.
This conclusion is further reinforced by the structure of other provisions adopted by the legislature along with subsection (g). See L. 2012, ch. 157, sec. 4. Subsection (g) relates to only one of seven situations where the speedy trial limit may be either tolled or assessed to one party or the other. Other subsections address the other six situations and each provides its own rules for calculating tire time. Subsection (d) relates to a defendant who absconds. Subsection (e) covers three situations: delays that result from proceedings to determine a defendant’s competency, situations where material evidence is not available, or continuances necessitated by a congested court calendar. Subsection (f) addresses what happens if a mistrial has been declared. Subsection (g), or at least its first sentence, covers a defendant’s request or agreement to a continuance and codifies this court’s holding that a delay because of a continuance can only be assessed against a defendant if requested or agreed to by the defendant. See Vaughn, 288 Kan. at 144-45. Subsection (h) applies when a trial is timely scheduled but is delayed because “a party has made or filed a motion, or because the court raises a concern on its own” motion. K.S.A. 2012 Supp. 22-3402(h). Finally, subsection (i) addresses calculation of time when “the state requests and is granted a delay for any reason provided in this statute.” K.S.A. 2012 Supp. 22-3402(i).
Through these various subsections, the legislature has covered all—or at least tire more common and significant—situations that *527 cause a trial delay. And each subsection provides unique rules for assessing the delay to either the State or the defendant and for calculating the delay’s impact on the speedy trial limitation. This structure suggests that each subsection has a unifying featuire and signals that the legislature likewise intended the second sentence of subsection (g) to relate only to the situation where a defendant requests or agrees to a delay.
Moreover, “in interpreting statutes we frequently point to parallel statutes [or provisions] and note that the language in one statute [or provision] may illustrate that the legislature knows how to state something that is omitted in another statute [or provision].” Cady v. Schroll, 298 Kan. 731, 749, 317 P.3d 90 (2014). Comparing subsection (i), which relates to tolling when the State requests and is granted a delay, to subsection (g), relating to the defendant’s request, is telling. K.S.A. 2012 Supp. 22-3402(i) provides:
“If the state requests and is granted a delay for any reason provided in this statute, the time elapsing because of the order granting the delay shall not be subsequently counted against the state if an appellate court later determines that the district court erred by granting the state’s request unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay.” (Emphasis added).
In contrast, subsection (g) does not refer to “a delay for any reason provided in this statute” but merely to “a delay.” Clearly, the legislature knew how to create a catch-all provision; it did so in subsection (i). But it did not do so in subsection (g). The majority, in effect, reads the above italicized phrase from subsection (i)—or at least the words “for any reason”—into subsection (g), in contravention of our general rule that we “will not read into the statute something not readily found in it.” Cady, 298 Kan. at 738-39. Without this added, expansive language, the second sentence of subsection (g) refers only to the delay allowed by the first sentence—a delay requested or agreed upon by the defendant.
The State’s burden of ensuring compliance with the speedy trial statute may have motivated the statutory distinction between delays requested by a defendant and those charged to the State. See State v. Adams, 283 Kan. 365, 369, 153 P.3d 512 (2007). According to the “Supplemental Note on Substitute for Senate Bill No. 307” *528 prepared by the Legislative Research Department, the bill that led to the 2012 amendments to the speedy trial statute “was introduced by the Senate Judiciary Committee at the request of the Kansas County and District Attorneys Association (KCDAA).” Also, given that subsections (c), (d), (e), (f), and (h) address rules for most other delays caused by a defendant, there is just no need for a catch-all clause in subsection (g). Compare K.S.A. 2012 Supp. 22-3402(d) (defendant absconds), with State v. Hess, 180 Kan. 472, 475, 304 P.2d 474 (1956) (stating that the speedy trial statute “ 'does not operate in favor of a fugitive from justice’ ”); K.S.A. 2012 Supp. 22-3402(e) (delays because of competency proceedings), with State v. Davis, 277 Kan. 309, 333, 85 P.3d 1164 (2004) (charging all delays in proceedings relating to a competency challenge, including the time between filing a motion to determine competency and the decision on the motion, and any time spent in treatment, to the defendant).
In light of these various considerations, I would conclude that the savings provision in K.S.A. 2012 Supp. 22-3402(g) applies only when a defendant has requested or agreed to a delay. Here, Brown-lee had clearly and repeatedly expressed disagreement with any delays and he was not consulted about the specific continuance at issue. Without the savings provision of subsection (g), the mandate of subsection (a) applies, and Brownlee is “entitled to be discharged from further liability to be tried for the crime charged.” See K.S.A. 2012 Supp. 22-3402(a).
2. Reversible error occurred in failing to instruct on the lesser included offense.
In addition, I disagree with the majority’s conclusion that the district court did not err in failing to instruct the juiy on the lesser included offense of voluntary manslaughter.
The majority correctly identifies the stair-step analysis that controls this issue, citing State v. Plummer, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). Applying that analysis, the majority appropriately disposes of steps one and two by determining: (1) Brownlee objected and thus fully preserved this issue and (2) it would have been legally appropriate to have instructed the jury on voluntary *529 manslaughter as a lesser included offense of first-degree premeditated murder. The majority then holds a voluntaiy manslaughter instruction was not factually appropriate. I disagree with this holding.
Under K.S.A. 2014 Supp. 22-3414(3), a lesser included offense instruction is required “where there is some evidence which would reasonably justify a conviction of some lesser included crime.” In Plummer, we explained that a court’s evaluation of whether the evidence sufficiently meets this standard is “akin” to an assessment of the sufficiency of the evidence. Plummer, 295 Kan. at 161-62. Given that Brownlee requested the voluntary manslaughter instruction, the district court, in applying the sufficiency standard, should have viewed the evidence in the light most favorable to Brownlee—in this-circumstance, in the light justifying the instruction—and asked if a rational factfinder could have found Brownlee guilty of voluntary manslaughter. See 295 Kan. at 162.
The majority determines the evidence falls short of this standard because it did not sufficiently prove, from an objective standpoint, drat Brownlee lost self-control or acted out of passion rather than reason. The majority instead concludes that a dispute between Tony “Black” Irvin and odier partygoers had merely “simmered” throughout the day and into the evening. State v. Brownlee, 302 Kan. 514 (citing State v. Hayes, 299 Kan. 861, 866, 327 P.3d 414 [2014]). Granted, the evidence generally showed that for most of the evening Brownlee had remained out of the fray and had, in fact, twice tried to calm odiers and diffuse tensions. But the evidence also show's that this situation changed just before the shooting.
At that point, the anger escalated and several individuals, including Irvin and Brownlee, moved- outside the house. According to Brownlee’s sister Shaella the tension was so high that Kenneth Brinson shot the ground three times, saying, “[Y]’all gonna calm down or I’m—I’m gonna start acting crazy.” Shaella then saw Irvin speak to Brownlee and heard Brownlee say that he was not going to fight, though she also testified that her sister Brandie was trying to calm Brownlee down and telling him to “stay out of it.” According to Shaella, someone fired some more shots, this time into the *530 air, and she ran upstairs. A few minutes later she came back downstairs and saw Irvin and Brownlee physically fighting each other and “rassling.” Other evidence supports the conclusion that the situation involving Brownlee escalated once he was confronted by Irvin outside. Shaella testified Brandie went outside to “try[] to calm [him] down.” And John Doran, as well as Shaella, testified that Irvin and Brownlee argued outside the house and that Doran stepped between them to try and break up die argument. Gunshots soon followed.
From these accounts, a rational factfinder could have found beyond a reasonable doubt that Brownlee shot Irvin intentionally upon a sudden quarrel or in the heat of passion. See K.S.A. 2014 Supp. 21-5404(a). This evidence indicates that while much of the evening’s tension had been between Irvin and people other than Brownlee, once they were outside things between the two of them became heated. At least one person saw Irvin say something to Brownlee that suggested Irvin wanted to fight—though Brownlee initially responded that he would not fight. But a fight began anyway.
Again, since Brownlee requested the voluntary manslaughter instruction, the district court should have viewed tire evidence in the light most favorable to him and in the light justifying the instruction. See Plummer, 295 Kan. at 161-62. I would conclude the above-described testimony, viewed in this light, constitutes evidence of heat of passion, which we have defined to include “ ‘ “any intense or vehement emotional excitement of the land prompting violent and aggressive action.” ’ [Citations omitted.]” State v. Wade, 295 Kan. 916, 925, 287 P.3d 237 (2012); see State v. Story, 300 Kan. 702, 711, 334 P.3d 297 (2014) (discussing definition of “heat of passion”); State v. Coop, 223 Kan. 302, Syl. ¶ 1, 573 P.2d 1017 (1978) (heat of passion “ ‘includes an emotional state of mind characterized by anger, rage, hatred, furious resentment, or terror’ ”). Thus, I would hold the district court erred in failing to give the voluntary manslaughter instruction.
Johnson, J., joins the foregoing dissenting opinion.